IOWA UTILITIES BOARD, Petitioner,

Bell Atlantic Corporation, et al.,
Intervenors on Appeal,

v.

FEDERAL COMMUNICATIONS
COMMISSION; United States
of America, Respondents.

Nos. 96–3321, 3406, 3410, 3414, 3416, 3418, 3424, 3430, 3436, 3444, 3450, 3453, 3460, 3507, 3519, 3520, 3603, 3608, 3696, 3708, 3709, 3756, 3901, 3906, 3982.

United States Court of Appeals,
Eighth Circuit.

Jan. 22, 1998.

Diane Munns, Des Moines, IA, argued, for Iowa Utility Board, Mark L. Evans, Washington, DC, argued, for Ameritech, Bell Atlantic Telephone Companies, BellSouth Corp., SBC Communications, Inc., US West, Inc. and United States Telephone Assoc., M. Edward Whelan, Washington, DC, argued, for GTE.

Christopher J. Wright, Washington, DC, argued, for FCC, David W. Carpenter, Chicago, IL, argued, for Intervenors on Appeal.

Before BOWMAN, WOLLMAN, and HANSEN, Circuit Judges.

HANSEN, Circuit Judge.

## I.

Several petitioners have filed motions requesting this court to issue and enforce our mandate in the case of *Iowa Utils. Bd. v. FCC*, 120 F.3d 753 (8th Cir.1997).[1] On Octo-

---

1. Petitions for writs of certiorari have been filed and are currently pending before the Supreme Court. *See AT & T Corp. v. Iowa Utils. Bd.*, 66 U.S.L.W. 3387 (U.S. Nov. 17, 1997) (No. 97–826); *MCI Telecomm. Corp. v. Iowa Utils. Bd.*, 66 U.S.L.W. 3387 (U.S. Nov. 18, 1997) (No. 97–

ber 14, 1997, after granting motions for panel rehearing, we amended our July 18, 1997, decision and issued the mandate. *See id.* at 813 (replacing Section II(G)(1)(f)); *id.* at 818 n. 38 (clarifying scope of vacatur); *id.* at 819 n. 39 (clarifying scope of vacatur). We expressly reserved jurisdiction over the petitioners' motions to enforce the mandate. Today, following oral argument on the motions, we address that issue.

One of the core holdings of our July 18, 1997, decision was that the Federal Communications Commission (FCC) has no jurisdiction to issue pricing regulations for interconnection, unbundled access, resale, and transport and termination of local telecommunication services under section 252(d) of the Telecommunications Act of 1996.[2] We held that the Act vests exclusive authority to establish the pricing requirements of this section in the state commissions, and we vacated the FCC's pricing regulations in which the FCC purported to arrogate that power to itself. Today we hold that the FCC violated this central tenet of our decision when it issued its Ameritech Michigan Order of August 19, 1997.[3] Because that portion of the Ameritech Order which offends our decision is, in our view, an advisory opinion of the FCC, we need not review the FCC's denial of Ameritech's application or even determine whether we have jurisdiction to do so. Rather, Petitioners request and we grant prospective relief in the form of a writ of mandamus. Specifically, we direct the clerk of this court to issue a writ of mandamus ordering the FCC to abide by our mandate and to refrain from subsequent attempts to apply either directly or indirectly its vacated pricing policies re-

garding the pricing of interconnection, unbundled access, resale, and transport and termination of local telecommunications traffic. For reasons which we explain, it has no authority to do so under section 271(d)(3)(A) or section 271(d)(3)(C) of the Act.

## II.

### A. The Mandate

In our July 18 decision, we held in the clearest possible terms that the state commissions have exclusive jurisdiction to regulate the prices that incumbent local exchange carriers (LECs) may charge their competitors for access to the incumbent LECs' local telephone network facilities. After a detailed analysis of sections 251 and 252 of the Act, we concluded that "the Act plainly grants the state commissions, not the FCC, the authority to determine the rates involved in the implementation of the local competition provisions of the Act." *Iowa Utils. Bd.,* 120 F.3d at 796. Elsewhere we wrote that

> the terms of the Act clearly indicate that Congress did not intend for the FCC to issue any pricing rules, let alone preempt state pricing rules regarding the local competition provisions of the Act. Because the Act clearly grants the states the authority to set the rates for interconnection, unbundled access, resale, and transport and termination of traffic, the FCC has no valid pricing authority over these areas of new localized competition for the states to negate.... [S]ubsections 252(c)(2) and 252(d) clearly assign jurisdiction over the rates for the local competition provisions of the Act to the state commissions[.]

---

829); *Association for Local Telecomms. Servs. v. Iowa Utils. Bd.,* 66 U.S.L.W. 3387 (U.S. Nov. 18, 1997) (No. 97–830); *FCC v. Iowa Utils. Bd.,* 66 U.S.L.W. 3387 (U.S. Nov. 19, 1997) (No. 97–831); *Ameritech Corp. v. FCC,* 66 U.S.L.W. 3459 (U.S. Dec. 24, 1997) (No. 97–1075); *GTE Midwest Inc. v. FCC,* 66 U.S.L.W. 3459 (U.S. Dec. 30, 1997) (No. 97–1087); *US West Inc. v. FCC,* 66 U.S.L.W. 3459 (U.S. Jan. 5, 1998) (No. 97–1099); *Southern New England Tel. v. FCC,* —— U.S.L.W. —— (U.S. Jan. 8, 1998) (97–1141).

**2.** The Telecommunications Act of 1996 (the Act) is codified in Volume 47 of the United States Code. We refer to it throughout by reference to

the applicable section number. "Section 252(d)," for example, denotes 47 U.S.C. § 252(d).

**3.** *See In re Application of Ameritech Michigan Pursuant to Section 271 of the Communications Act of 1934, as amended, to Provide In–Region, InterLATA Services in Michigan,* FCC 97–298, 1997 WL 522784 (Aug. 19, 1997) (memorandum opinion and order denying application of Ameritech Michigan pursuant to section 271, as amended, to provide in-region, interLATA Services in Michigan) (petitions for recon. pending) [hereinafter *Ameritech Order*].

*Id.* at 798–799 (internal citations omitted). In short, our decision made very clear that "Congress did not envision the FCC's participation in determining the prices that the incumbent LECs will be able to charge for opening their networks to new entrants." *Id.* at 795. We held that in promulgating regulations purporting to govern the types of pricing systems state commissions were to adopt, the FCC had exceeded its statutory authority and violated the plain meaning of the 1996 Federal Communications Act. Accordingly, we vacated the national pricing rules that the FCC had promulgated.

## B. The FCC's Ameritech Order

We filed our *Iowa Utils. Bd.* decision on July 18, 1997. On August 19—scarcely one month later—the FCC made clear its intention to disregard those portions of our decision with which it disagreed. It did so in the memorandum opinion and order which it issued denying Ameritech Michigan's application to provide in-region interLATA services in Michigan. In that opinion, the FCC reasserted its authority to do precisely what we held in *Iowa Utils. Bd.* it had no power to do. It asserted that it had the authority to interpret section 252(d) of the Act, and it adopted a policy which will coerce state commissions to adopt its vacated TELRIC-based pricing rules for implementation of the local competition provisions of the Act in spite of our order.

The Ameritech Order denied Ameritech's application for authorization under section 271 of the Communications Act of 1934, as amended, to provide in-region, interLATA services in the State of Michigan. It denied the application because it found that Ameritech had failed to satisfy section 271's competitive checklist's requirements of access to its operations support systems, interconnection, and access to its 911 and E911 services. Finding these three failures to be dispositive, the FCC determined that it need not and would not address whether Ameritech had satisfied the other requirements of the competitive checklist. *See Ameritech Order* ¶¶ 5–6, 280–81. Specifically, it "[did] not reach the question of whether Ameritech's pricing of checklist items complies with the requirements of section 271[.]" *Id.* ¶ 281.

Thus, paragraphs 280–297, wherein the FCC reasserts its authority to establish the prices for the local competition provisions, do not address the merits of Ameritech's application, but instead constitute an advisory opinion. The FCC explained its issuance of such an opinion by stating that it sought to provide guidance as to what showing would be required in future applications to demonstrate full compliance with the checklist. *Id.* ¶¶ 6, 281.

It is not for us to address the propriety of the FCC's issuance of an important policy statement in an advisory opinion separate from the merits determination of a section 271 order. Rather, our inquiry is limited to the question of whether the issuance of this particular advisory opinion and its content constitute a violation of our mandate. It clearly does. The FCC admits in paragraph 283 that "the Eighth Circuit has held that the Commission lacks jurisdiction to issue national rules establishing a methodology by which the states determine the rate for interconnection, unbundled network elements, resale, and transport and termination in state-arbitrated interconnection agreements pursuant to section 252." Inexplicably, it then proceeds to establish just such a methodology, stating that the cost-based standard of § 252(d) is contained in a federal statute and is "therefore[ ] presumed to have a uniform meaning nationwide." *Id.* ¶ 286. This attempt to reassert the vacated pricing rules by imposing them as conditions for entry by the Bell Operating Companies into the in-region, interLATA telecommunications business does by indirection what we told the FCC in *Iowa Utils. Bd.* it could not do. The FCC cannot do in an advisory opinion in a ruling on a section 271 application that which we have expressly forbidden it from doing in its rule-making procedure. A more clear violation of our mandate could hardly be imagined.

## C. Section 252

Section 271(d)(3) requires the FCC to determine whether an applicant has implemented the competitive checklist of Section 271(c)(2)(B). Items (i), (ii), (xiii), and (xiv) of

that checklist in turn require a Bell Operating Company (BOC) to provide interconnection, access to unbundled network elements, transport and termination, and resale prices that are "in accordance with" subsections (c) and (d) of section 252.[4] In other words, items (i), (ii), (xiii), and (xiv) of the competitive checklist do nothing more than incorporate by reference the specific requirements of sections 251 and 252. As discussed above, our July 18 decision clearly held that only the state commissions have the statutory authority to set prices under sections 251(c) and 252(d).

The FCC does not contest the fact that section 271(c)(2)(B) merely requires compliance with sections 251(c) and 252(d) of the Act, and it concedes that it "lack[s] authority to prescribe a national pricing methodology to implement the requirements of section 252(d)." *See id.* ¶ 284. Nonetheless, it engages in a lengthy discussion of its interpretation of section 252(d), *see id.* ¶¶ 282–294, and ends this discussion by concluding that subsections (i), (ii), and (xiii) of section 271(c)(2)(B) all require that the rates charged by the applicant BOC must be based on TELRIC principles. *Id.* ¶¶ 292–93. It clearly announces that it will not grant a section 271 application unless the rates are based on TELRIC principles. *Id.* In so doing, the FCC reinstates the substance of the pricing rules we vacated in our prior decision. In other words, in order to receive future FCC approval, a BOC will have to show that it prices its interconnection, unbundled access, resale, and transport and termination offerings under prices determined by the FCC's methodology. This violates our mandate. As discussed above, the very core of our holding was that the state commissions—not the FCC—have the exclusive authority to determine the pricing requirements of section 252(d).

The FCC's justification for its reassertion of local pricing authority lacks even the scent of merit. It argues, in effect, that practical necessity requires it to violate the clear direction of this court. It writes:

Because the Eighth Circuit concluded that the Commission lacked authority to prescribe a national pricing methodology to implement the requirements of section 252(d), if that decision stands, the meaning of section 252(d) ultimately will be determined through de novo review of state determinations by the federal district courts. The Act provides that parties aggrieved by state determinations under section 252 may sue in federal district court. Consequently, the district courts will review numerous interconnection agreements from some, if not all, of the states and the District of Columbia. The Courts of Appeals and, perhaps ultimately, the Supreme Court, will resolve the issue of what the statutory requirement that rates be cost-based means. This litigation will take years, however, and inevitably will run the risk of impeding or significantly delaying the development of competition in the local exchange market, and, consequently, delaying the deregulation of the telecommunications markets that Congress envisioned.

While the question of what constitutes cost-based pricing under section 252(d) wends it [sic] way through the courts, the Commission, pursuant to section 271, must determine whether the BOCs have fully implemented the competitive checklist,

---

**4.** 47 U.S.C. § 271(c)(2)(B), the Competitive Checklist, provides in relevant part:

Access or interconnection provided or generally offered by a Bell operating company to other telecommunications carriers meets the requirements of this subparagraph if such access and interconnection includes each of the following:
(i) Interconnection in accordance with the requirements of sections 251(c)(2) and 252(d)(1) of this title.
(ii) Nondiscriminatory access to network elements in accordance with the requirements of sections 251(c)(3) and 252(d)(1) of this title.
* * *
(xiii) Reciprocal compensation arrangements in accordance with the requirements of section 252(d)(2) of this title.
(xiv) Telecommunications services are available for resale in accordance with the requirements of sections 251(c)(4) and 252(d)(3) of this title.
The FCC cites subsections (i), (ii), and (xiii) in support of its assertion of pricing authority. *See Ameritech Order* ¶¶ 292–93. We additionally discuss subsection (xiv) to clarify that nothing on the checklist could possibly be interpreted to grant such authority.

which incorporates the section 252(d) cost-based standard. The BOCs will file section 271 applications in the meantime, and the Commission is obligated by section 271 to issue a written determination approving or denying the authorization requested not later than 90 days after receiving an application.

*Ameritech Order* ¶¶ 284–85. The FCC uses this policy of expediency argument to justify its decision to flout this court's decision. However, the policy argument is both flawed and beside the point.

The FCC's policy argument is flawed because, counter to the assertion in paragraph 285 of the Ameritech Order, the FCC need not wait for the courts to review the state pricing regimes before it can apply them. Rather, the decisions of the state commissions are binding the moment they are issued. It is true that the pricing schemes established by the state commissions are appealable to the federal district courts by aggrieved parties, as Congress has directed. However, pending any such appeals, the pricing determinations of the state commissions constitute binding law. Thus, the parade of horribles described by the FCC will never arise. The FCC's role is, in fact, quite simple: It must ascertain whether each individual applicant BOC has complied with the individual state commission's pricing scheme applicable to it and in effect at the time of the application. This can be done in part by simply asking the state commission whether the applicant BOC has complied with the state commission's pricing rules, as contemplated by section 271(d)(2)(B).[5] There will therefore be no occasion for the FCC to invent a requirement that pricing be done according to TELRIC principles. In fact, the FCC is expressly barred from limiting or extending the checklist "by rule or otherwise." *See* 47 U.S.C. § 271(d)(4).

The arguments advanced by the FCC are also beside the point. Notwithstanding its merits, a policy argument bottomed on an agency's view of expediency can never justify the agency's disregard of the existing mandate of a federal court in a case in which the agency was a party litigant. "It is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803). After a court has spoken, the FCC is bound to follow that court's mandate, because the FCC "is not a court nor is it equal to [a] court in matters of statutory interpretation." *Yellow Taxi Co. of Minneapolis v. NLRB,* 721 F.2d 366, 382 (D.C.Cir.1983). The FCC's disagreement with this court's decision is "simply an academic exercise that possesses no authoritative effect[,]" and in predicating its reassertion of pricing authority on its disagreement with this court's interpretation of section 252, the FCC "operate[s] outside the law." *International Bhd. of Elec. Workers, Local Union No. 474 v. NLRB,* 814 F.2d 697, 705 n. 24 (D.C.Cir.1987) (NLRB is bound by court's articulation of the law); *accord Taxi Co. of Minneapolis,* 721 F.2d at 382; *Ithaca College v. NLRB,* 623 F.2d 224, 228–29 (2d Cir.), *cert. denied,* 449 U.S. 975, 101 S.Ct. 386, 66 L.Ed.2d 237 (1980); *Allegheny Gen. Hosp. v. NLRB,* 608 F.2d 965, 970 (3d Cir.1979), *abrogation on other grounds recognized, St. Margaret Mem'l Hosp. v. NLRB,* 991 F.2d 1146, 1152 (3rd Cir.1993). The FCC is free to ask (and indeed has asked)[6] the Supreme Court to reverse our decision, and it is free to ask the Congress to give it the authority to regulate the intrastate pricing of the local competition provisions we have said it does not now have. But in the absence of reversal or Congressional amendment, the FCC may not reassert its interpretation of section 252(d) or reassert its purported authority to mandate TELRIC pricing schemes for the local competition provisions when our order so clearly denies it that authority.[7]

---

5. The FCC is required to consult with the state commissions to verify the compliance of the BOCs with the checklist. *See* 47 U.S.C. § 271(d)(2)(B). We are not convinced by the FCC's argument that Congress intended section 271(d)(2)(B) to have no effect.

6. *See* note 1.

7. The FCC also argues that a uniform national pricing scheme would be easier to administer. *See Ameritech Order* ¶ 286. This additional expediency-based policy argument is similarly precluded by our clear mandate that, under the law, the state commissions have the exclusive authority to determine the price-setting mechanisms.

The FCC's attempt to continue to exercise pricing authority through section 271 is reminiscent of its earlier attempt to do so through section 208. We rejected that attempt in our prior decision. *See* 120 F.3d at 804. As we noted in our prior opinion, section 2(b) of the Communications Act of 1934, 47 U.S.C. § 152(b), as construed by the Supreme Court in *Louisiana Pub. Serv. Comm'n v. FCC,* 476 U.S. 355, 370, 106 S.Ct. 1890, 1899, 90 L.Ed.2d 369 (1986), fences off intrastate matters from FCC regulation. *See Iowa Utils. Bd.,* 120 F.3d at 796–800. Where there is no unambiguous grant of intrastate authority to the FCC and the impossibility exception to section 2(b) does not apply, section 2(b) prevents "the FCC from intruding on the states' intrastate turf." 120 F.3d at 800. We held in our prior decision, and we reiterate today, that no section or subsection of the Telecommunications Act allows the FCC to break through that fence. We reject not only its attempt to utilize section 271(d)(3)(A), but also its attempt to utilize section 271(d)(3)(C) to accomplish this purpose. The FCC may not accomplish indirectly that which we have held it may not do directly.

### D. Relief

The All Writs Act, 28 U.S.C. § 1651(a) (1994), gives federal courts the power to issue writs of mandamus. A federal court's power to utilize mandamus to enforce its prior mandate against an administrative agency is firmly established. *See City of Cleveland v. Federal Power Comm'n,* 561 F.2d 344, 346 (D.C.Cir.1977) (directing Federal Power Commission to come into compliance with the court's prior mandate); *International Ladies' Garment Workers' Union v. Donovan,* 733 F.2d 920, 922–23 (D.C.Cir.) (remanding to district court for additional discovery and determination of whether Secretary of Labor's reimplementation of rules vacated by District of Columbia Circuit violated the mandate, and directing district court to issue writ of mandamus if Secretary's action did violate the mandate), *cert. denied,* 469 U.S. 820, 105 S.Ct. 93, 83 L.Ed.2d 39 (1984); *see also Oswald v. McGarr,* 620 F.2d 1190, 1196 (7th Cir.1980) ("Mandamus is appropriate to review compli-

ance with discretionary standards and nondiscretionary commands set forth in an earlier opinion concerning the parties."); *Greater Boston Television Corp. v. FCC,* 463 F.2d 268, 278 (D.C.Cir.1971) ("An appellate court likewise has continuing power to accept and pass upon a petition to clarify an outstanding mandate."), *cert. denied,* 406 U.S. 950, 92 S.Ct. 2042, 32 L.Ed.2d 338 (1972). In *City of Cleveland,* the District of Columbia Circuit explained:

> The decision of a federal appellate court establishes the law binding further action in the litigation by another body subject to its authority. The latter is without power to do anything which is contrary to either the letter or spirit of the mandate construed in the light of the opinion of the court deciding the case, and the higher tribunal is amply armed to rectify any deviation through the process of mandamus. That approach, we have said, may appropriately be utilized to correct a misconception of the scope and effect of the appellate decision. These principles, so familiar in operation within the hierarchy of judicial benches, indulge no exception for reviews of administrative agencies.

561 F.2d at 346 (internal quotations, alterations, and footnotes omitted).

We have not only the power, but also a duty to enforce our prior mandate to prevent evasion. *See American Trucking Ass'ns, Inc. v. Interstate Commerce Comm'n,* 669 F.2d 957, 961 (5th Cir.1982) ("Having the power, we also have the duty to clarify the mandate and to direct future compliance with it by mandamus."), *cert. denied,* 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 493 (1983). Failure to clarify the mandate and direct future compliance where mandamus is the only adequate remedy would "reward bureaucratic misconduct and encourage judicial anarchy." *Department of the Navy v. Federal Labor Relations Auth.,* 835 F.2d 921, 923 (1st Cir.1987).

The mandate doctrine is a specific application of the doctrine of law of the case. Our mandate encompasses "everything decided, either expressly or by necessary implication." *City of Cleveland,* 561

F.2d at 348 (internal quotations omitted). A federal court of appeals can use mandamus to preclude an agency from taking steps to evade the effect of its mandate, even if these steps were not expressly contemplated by the prior decision. For example, in *MCI Telecomm. Corp. v. FCC,* 580 F.2d 590 (D.C.Cir.), *cert. denied,* 439 U.S. 980, 99 S.Ct. 566, 58 L.Ed.2d 651 (1978), the District of Columbia Circuit was asked to enforce its mandate against the FCC and AT & T. The court conceded that AT & T's position was not explicitly precluded by the language of the prior decision, *see id.* at 595, but nonetheless granted mandamus-type relief, because it found that the FCC position was "clearly inconsistent with the basic themes of our [ ] decision" and "deliberately frustrates the purpose of the litigation ... and the intended effect of our decree." *Id.* at 597; *see also id.* at 595.

 Respondents correctly point out that this court declines to grant mandamus relief unless there is "no other adequate alternative administrative or judicial remedy." *See In re Lane,* 801 F.2d 1040, 1042 (8th Cir.1986). In *American Trucking Ass'ns,* the Fifth Circuit clarified that a remedy is not "adequate," if it unduly burdens the aggrieved party. It noted that repeated litigation in "scores of cases" might eventually lead to resolution of the matter before it, but held that this alternative remedy was not adequate. *See* 669 F.2d at 961; *see also Department of the Navy,* 835 F.2d at 923 (requiring substantial relitigation of issues already decided would not constitute adequate alternative remedy).

The FCC's choice to promulgate its policy decision not in rules or regulations, but rather in an advisory opinion appended to a section 271 order was, in our view, clearly calculated so as to evade ordinary appellate review. We are concerned that the advisory nature of the portion which contradicts our mandate may render it unreviewable on direct appeal. We are also concerned by the fact that the offensive portion of the FCC's Order has, by its own terms, nothing to do with the actual denial of Ameritech's application—we suspect that this naked policy statement was added to the Ameritech Order in an attempt to forum-shop. Having lost in its

bid to usurp the power to determine intrastate prices in the Eighth Circuit, the FCC now seeks to have another bite at the apple in the District of Columbia Circuit.

This is the type of "evasion" that necessitates mandamus relief. The FCC's advisory opinion is clearly calculated to have a chilling effect on the state commissions' employment of non-TELRIC pricing schemes, and to do so in a way that avoids our review. It is a plain-faced reassertion of section 252(d) pricing authority over the local competition provisions of the Act by the FCC in clear violation of our mandate, and it therefore triggers our inherent jurisdiction to enforce our mandate.

Respondents argue that we can take no action with regard to the Ameritech Order, because jurisdiction over section 271 disputes is given exclusively to the District of Columbia Circuit. Although we have noted that the offensive portion of the Ameritech Order was not used as a reason for denying Ameritech's section 271 application, we conclude that we do not need to reach this question. The FCC specifically stated that it was not deciding whether Ameritech had satisfied the requirements of section 252(d). The FCC was simply using the advisory portion of its order as a vehicle by which it could intimidate state commissions into complying with the substance of the rules we vacated in our July 18 decision. If this intimidation tactic is successful, a case or controversy will never arise to challenge its validity, because all states will be forced to adopt the FCC determined pricing schemes. The harm we wish to address is therefore entirely prospective: we seek to assure state commissions that the pricing authority granted to them under section 252 is not eviscerated. Since the harm we seek to remedy is entirely prospective, we believe that a forward-looking remedy will suffice.

We therefore leave the FCC's Ameritech Order untouched. However, we grant mandamus to enforce our mandate in order to disabuse the FCC of the mistaken notion that it has the power to enforce the pricing policy judgment articulated in paragraphs

280–297 of the Order.[8] We order the FCC to apply section 252(d) in the context of section 271 as our *Iowa Utils. Bd.* decision requires. In other words, we order the FCC to cease and desist from attempting to give effect to its interpretation of the substantive requirements of section 252(d). We order the FCC to confine its pricing role under section 271(d)(3)(A) to determining whether applicant BOCs have complied with the pricing methodology and rules adopted by the state commissions and in effect in the respective states in which such BOCs seek to provide in-region, interLATA services. The FCC has no authority under section 271(d)(3)(A) or section 271(d)(3)(C) to issue rules, regulations, orders, policy statements, or any other genre of opinions regarding how the local competition provisions of the Act involving interconnection, unbundled access, resale, or transport and termination of traffic should be priced.

The motions to enforce the mandate are granted.

## WRIT OF MANDAMUS

In accordance with the order of the United States Court for Appeals for the Eighth

In accordance with the order of the United States Court of Appeals for the Eighth Circuit herein delivered, the Federal Communications Commission. is hereby ordered to obey the Court's October 14, 1997, mandate in Appeal No. 96-3321, Iowa Utilities Board v. Federal Communications Commission. The Federal Communications Commission is ordered to apply section 252(d) of the Telecommunications Act of 1996 in the context of section 271 as the Court's decision in Iowa Utils. Bd. v. FCC, 120 F.3d 753(8th Cir. 1997)requires. It is further ordered that the Federal Communications Commission cease and desist from attempting to give effect to its interpretation of the substantive require-

ments of section 252(d) of the Act. The Federal Communications commission is ordered to confine its pricing role under section 271(d)(3)(A) to determining whether applicant BOCs have complied with the pricing methodology and rules adopted by the state commissions and in effect in the respective states in which such BOCs seek to provide in-region, interLATA services.

It is so ordered.

---

**8.** The remedy we grant today is not unlike the remedy granted by the Fifth Circuit in *American Trucking Ass'ns,* 669 F.2d at 957. There the court issued mandamus in response to the Interstate Commerce Commission's (ICC's) continued application of a rule the Fifth Circuit had found to be invalid. There, as here, the agency had regulated beyond the scope of its statutory authority. Like the FCC in the case at hand, the ICC continued to impose the substance of the rule in various separate individual administrative adjudications, notwithstanding the mandate of the court of appeals. The Fifth Circuit granted petitioners' request that it issue a writ of mandamus ordering the ICC to "comply in all pending actions before it with the full scope of this Court's opinion." *Id.* at 960 (internal quotes omitted).