# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3886

_____

|  |  |  |
|---|---|---|
|  | * |  |
| In re: MidAmerican Energy | * | On Petition for Writ |
| Company, | * | of Mandamus. |
|  | * |  |
| Petitioner. | * | [PUBLISHED] |

_____

Submitted: February 12, 2002

Filed: April 3, 2001 - Corrected April 11, 2002

_____

Before WOLLMAN, BEAM, MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

PER CURIAM.

Petitioner MidAmerican Energy Company ("MEC") files this writ of mandamus seeking enforcement of our prior opinion, Nebraska Public Power District v. MidAmerican Energy Co., 234 F.3d 1032 (8th Cir. 2000) (hereinafter NPPD I).

## I.     BACKGROUND

A more complete recitation of the facts is found at NPPD I. However, a brief summary will provide context for the instant dispute.

In 1967, the parties' predecessors entered a "Power Sales Contract" ("PSC"), obligating Nebraska Public Power District ("NPPD") to construct and manage a nuclear power facility known as the Cooper Nuclear Station ("Cooper"), and

obligating MEC to purchase power therefrom until 2004. The PSC remains in effect until that year and requires NPPD to submit to MEC a monthly statement reflecting the prior month's Monthly Power Costs. In 1984, NPPD added a line item for decommissioning costs to this statement. While the parties neither reached a separate agreement nor amended the PSC to address these decommissioning costs, MEC paid these amounts without objection. As of the commencement of this litigation, MEC had paid approximately $78,000,000 toward these estimated charges.

This case originated in federal court when NPPD sought a declaratory judgment that the contract between NPPD and MEC required MEC to make current, non-refundable payments toward estimated decommissioning costs of Cooper, arguing that such payments fell within the contract definition of Monthly Power Costs. Essentially, NPPD wanted a declaration that the decommissioning costs paid to-date by MEC were not voluntary, but rather required under the PSC as payments for power and energy, and therefore non-refundable even if NPPD continued operation of Cooper after 2004. MEC counterclaimed to establish its right to recover the amounts it had already paid toward decommissioning if NPPD continued to operate the power plant after 2004. The district court found the PSC unambiguously supported NPPD's position, holding that MEC had an unconditional obligation to pay, in the past and until the expiration of the PSC on September 21, 2004, non-refundable decommissioning costs.

MEC appealed the district court ruling, arguing that the district court erred because the PSC does not require payments of estimated decommissioning costs and unambiguously exempts MEC from all decommissioning liability if NPPD continues operations after 2004. We agreed, and determined that "the PSC does not require MEC to make current, non-refundable payments of estimated decommissioning costs to NPPD, but makes MEC liable for Cooper's decommissioning only in the event that NPPD shuts Cooper down in 2004." 234 F.3d at 1046. Moreover, we held that even though "the PSC does not bar MEC's claims for restitution of amounts already paid,"

-2-

we specifically left unresolved "the question whether MEC may recover payments already made in the event NPPD does continue operating Cooper after 2004." Id. at 1045 n.7, 1046. As for MEC's counterclaims under restitution and estoppel theories seeking recovery of those funds, we clarified that those claims were not before us and directed the parties to return to the district court to litigate them. Id. at 1045 n.7. Thus, we reversed the district court's ruling and remanded the case for trial on the narrow issue of whether MEC might succeed on its counterclaims for recovery of the funds it had already paid into the decommissioning sinking fund, and all other outstanding claims.[1]

On remand, NPPD sought leave to file a second amended complaint in order to raise new claims which, according to MEC, were recast versions of NPPD's previous allegations. The magistrate judge granted NPPD's motion, and on appeal the district judge affirmed the magistrate's decision. MEC now files an emergency petition for writ of mandamus to compel compliance with our original mandate, NPPD I. MEC claims that our prior opinion forecloses the causes of action now raised by NPPD, and that if the parties proceed to trial, they will be relitigating the same claims as to MEC's liability for decommissioning costs that we previously decided.

---

[1]"All other outstanding claims" would have necessarily included those claims not before us on appeal–namely, issues two and three of NPPD's Amended Complaint raising claims regarding the method of investing the decommissioning trust funds under the contract, and whether the inclusion of transition costs as part of the decommissioning cost is proper under the contract. The other remaining outstanding claims include MEC's fourth, sixth, seventh, eighth, ninth, and tenth contingent counterclaims, which were not certified for appeal by the district court nor raised by either party in their cross motions for partial summary judgment, as well as MEC's second and third contingent counterclaims which were remanded for consideration by the district court when we reversed the district court ruling granting partial summary judgment to NPPD. Additionally, any defenses NPPD might raise in response to MEC's remaining counterclaims are now before the district court.

## II.    DISCUSSION

The All Writs Act, 28 U.S.C. § 1651(a) gives federal courts the power to issue writs of mandamus.  The issuance of a writ of mandamus is an extraordinary remedy reserved for extraordinary situations.  See, e.g., Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 289 (1988).  The Supreme Court has held that only "exceptional circumstances amounting to a judicial 'usurpation of power'" will justify issuance of the writ. Will v. United States, 389 U.S. 90, 95 (1967) (quoting De Beers Consol. Mines, Ltd. v. United States, 325 U.S. 212, 217 (1945)).  Accordingly, courts seldom issue writs interfering with a lower court trial order.  However, "it is important to remember that issuance of the writ is in large part a matter of discretion with the court to which the petition is addressed." Kerr v. United States Dist. Court, 426 U.S. 394, 403 (1976).

A federal court's power to utilize mandamus to enforce its prior mandate is firmly established.  Iowa Utils. Bd. v. FCC, 135 F.3d 535, 541 (8th Cir. 1998), vacated on other grounds by 525 U.S. 1133 (1999); Brictson Mfg. Co. v. Munger, 20 F.2d 793, 794 (8th Cir. 1927).  Mandamus will lie "to confine a lower court to the terms of an appellate tribunal's mandate." Will, 389 U.S. at 95-6.  Ultimately, "[w]e have not only the power, but also a duty to enforce our prior mandate to prevent evasion." Iowa Utils. Bd., 135 F.3d at 541.

In its second amended complaint, NPPD raises the following causes of action:

(1) Modification or Separate Contract (asserting that NPPD and MEC either modified the PSC or created a separate agreement to provide that MEC had an unconditional obligation to pay fifty percent of the estimated decommissioning costs);

-4-

(2) Quantum Meruit/Unjust Enrichment (asserting that MEC will be unjustly enriched and NPPD deprived if MEC is permitted to retain the benefits without paying fifty percent of the estimated decommissioning costs);

(3) Promissory Estoppel (asserting that MEC promised NPPD that it would pay fifty percent of all costs resulting from Cooper, including decommissioning, and NPPD relied to its detriment on this promise);

(4) Reformation (asserting that to the extent the PSC does not impose on MEC a current unconditional obligation to pay its fifty percent share of non-refundable decommissioning costs, the parties made a mutual mistake and the PSC in its current form does not reflect the actual intent of the parties);

(5) Investments (seeking a declaration that NPPD has acted properly in all respects regarding the investment of monies being accumulated for decommissioning);

(6) Refund of Prepaid Estimated Decommissioning Costs (asserting that because MEC voluntarily prepaid decommissioning costs, MEC is barred from receiving a refund); and

(7) Decommissioning Costs (seeking a declaration determining what costs are "decommissioning costs" within the contemplation of the parties).

MEC argues in its petition for writ of mandamus that NPPD's first four causes of action in its second amended complaint all devolve into exactly the same claim that was before us in NPPD I, and that under the doctrine of the law of the case, NPPD's decommissioning claim was explicitly and implicitly resolved by this court's judgment. We agree.

-5-

"Our mandate encompasses 'everything decided, either expressly or by necessary implication.'" Iowa Utils. Bd., 135 F.3d at 541 (quoting City of Cleveland v. Federal Power Comm'n, 561 F.2d 344, 348 (D.C. Cir. 1977)). At issue in our prior opinion was whether the plain meaning of the PSC unambiguously obligated MEC to make current, non-refundable payments towards estimated decommissioning costs. We held that the PSC imposed no such obligation on MEC. NPPD I, 234 F.3d at 1045. In so holding, we specifically stated that "[w]hile the parties neither reached a separate agreement nor amended the PSC to address these costs, MEC paid these statements without objection." Id. at 1037. Thus, we clearly determined that MEC had no obligation under contract or any other separate agreement, equitable or otherwise, to make current, non-refundable payments towards estimated decommissioning costs. NPPD is thus foreclosed from amending its complaint to include new theories of recovery on these issues.

In this case, NPPD's claim has always been in contract. NPPD's amended complaint sounds in contract, the motion for summary judgment before the district court was in contract and the district judge dealt with the issues in contract. On appeal to this court, NPPD again argued that the four corners of the document supported the opinion of the district judge holding MEC liable for current, non-refundable estimated decommissioning costs. In its brief NPPD stated that "MEC's assertion now that its payments of decommissioning costs have actually been a kind of voluntary contribution under some phantom agreement existing between the parties outside the provisions of the Contract is, in its most flattering light, imaginative." Brief of Appellee NPPD at 29, NPPD I, 234 F.3d 1032 (8th Cir. 2000) (No. 99-4067).

Additionally, "claims not raised in an initial appeal brief are waived." Sweat v. City of Fort Smith, 265 F.3d 692, 696 (8th Cir. 2001). At no prior time during the pendency of this litigation in either the district court or in this court did NPPD raise alternate allegations regarding any separate agreement or equitable theory of liability

regarding MEC's obligation to pay decommissioning costs.[2]  As a result, NPPD is now foreclosed from raising in a second amended complaint alternate theories of liability requiring MEC to pay estimated decommissioning costs.

The *only* issues left for the district court are whether MEC may recover payments already made to NPPD, under theories of contract or equity, and the remaining issues set forth in the parties' pleadings, not taken up on appeal or left unresolved by our reversal of the district court's grant of partial summary judgment in favor of NPPD.[3]  Whether NPPD has some defense, equitable or otherwise, as to the payments already made by MEC, is an issue we did not address in our prior opinion.  And, we are not now saying that a contractual or equitable defense to MEC's current claim of restitution would not prevail.  However, in order to preserve the integrity of our original mandate in this case, NPPD will not be allowed to relitigate the issue of whether MEC has any liability, contract or otherwise, to continue paying estimated decommissioning costs.

NPPD makes much of MEC's assertion that it paid decommissioning costs pursuant to a separate agreement and that the district court must now determine the terms of that actual agreement.  However, we state with emphasis that this court has

_____

[2]NPPD claims that it raised the issue of modification in its reply and in discovery prior to the appeal, thus preserving its ability to include its new causes of action as amended.  It is true that NPPD did allege modification in each affirmative defense to MEC's amended counterclaims.  However, our holding on appeal necessarily determined that the PSC in its then-present form, which would have included any modification by the parties, did not impose liability on MEC to make current, non-refundable payments of estimated decommissioning costs to NPPD. Any argument regarding modification of the PSC should have been raised by NPPD in that appeal, as the only issue before the Eighth Circuit at that time was an interpretation of the PSC in its present form.

[3]Ante note 1.

already determined that the parties "neither reached a separate agreement nor amended the PSC to address these costs." Thus, relitigation of this matter before the district court is not in accordance with our prior mandate. NPPD may not retrofit its complaint to circumvent a binding, unfavorable opinion. These arguments could, and should, have been raised earlier. It is inappropriate to consider them on remand. NPPD chose not to argue these points in the initial stages of litigation, and may not stand better off as regards the law of the case than one who has argued and lost. See Laffey v. Northwest Airlines, Inc., 740 F.2d 1071, 1089-90 (D.C. Cir. 1984).

We remand this case to the district court for further consideration in conformity with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-