# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1541

_____

Valroy G. Watson,                           *
                                            *
        Appellant,                          *
                                            *   Appeal from the United States
    v.                                      *   District Court for the
                                            *   Western District of Missouri.
Paul O'Neill, Secretary of                  *
the Treasury,                               *
                                            *
        Appellee.                           *

_____

Submitted: September 10, 2003

Filed: April 7, 2004 (corrected 4/30/04)

_____

Before MELLOY, LAY, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Valroy Watson has been employed with the Internal Revenue Service ("IRS") since 1987. In 1995, the IRS did not select Watson for a Building Management Specialist position for which he had applied. Watson complained to the Equal Employment Opportunity Commission ("EEOC") that the IRS had unlawfully discriminated against him based upon his sex and his race. Watson also claimed that the IRS retaliated against him for filing a previous EEOC complaint. After the EEOC

denied his claims, Watson commenced this action, asserting claims of sex and race discrimination and retaliation.

The district court[1] dismissed all claims, save one. On Watson's remaining discrimination claim, based on his non-selection for the Building Management Specialist position, a jury returned a verdict in favor of the IRS. Watson appeals the district court's refusal to grant his motion for new trial, and its grant of partial-summary judgment on the dismissed claims. We affirm.

I. *Facts*
A. *Building Manager Position*

In December of 1994, the IRS announced an opening for a new Building Management Specialist position.[2] Watson–who was employed by the IRS in another position–applied for the Building Management position. The IRS considered Watson to be qualified for the position; in fact, he was selected as a "Best Qualified Candidate." Each top candidate was interviewed by a three-person IRS management panel. The IRS selecting officer for the Building Management Specialist position was Herb Borchert, an Hispanic male. To assist with the interviewing of candidates, Borchert selected IRS employees Linda Potter and Bettye Lynn.

During the interviews, each candidate was asked the same series of position-relevant questions. At the conclusion of the interview process, the candidates were independently scored by each of the interviewers. All three interviewers rated the

---

[1] The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

[2] In early 1994, Watson was detailed into an "Acting Building Management Specialist" position. During his ninety-day detail, he was responsible for maintaining the environment and overseeing service contracts owned and leased by the IRS. The person ultimately selected for the open position, Milling Canon, replaced Watson in the ninety-day detail position.

-2-

same two candidates as the top choices: Watson and Milling Canon. Both Potter and Lynn gave Watson and Canon identical scores, while Borchert scored Canon one-point higher than Watson. Borchert looked beyond the interview scores and examined the files and records maintained by each candidate during their respective ninety-day stints as "Acting Building Management Specialist." Although Borchert found Watson's files to be adequate, he concluded that Canon maintained better files. Consequently, Borchert selected Canon as the new Building Management Specialist.

Fran Meeks and Tim Schillingburg, Borchert's first- and second-line supervisors, approved Borchert's decision to select Canon for the position. Watson introduced evidence that both Meeks and Schillingburg had previously made discriminatory statements concerning Watson. In 1994, Meeks commented that "I'm not going to let a nigger manage my bitches." Watson also alleged that Schillingburg–upset with Watson for filing an affidavit in another employee's 1993 EEOC case–stated that Watson would never excel in the agency because he had assisted in a 1993 case, in which Schillingburg was named as a discriminating official.

In July 1995, Watson consulted with an EEOC counselor about his non-selection for the Building Management Specialist position. Watson later filed a formal complaint of discrimination alleging that his non-selection was the result of race and gender discrimination. In his formal complaint of discrimination, Watson did not check the box for "RETALIATION/REPRISAL." He also did not allege any type of discriminatory conduct indicating retaliation or reprisal. As such, the only claims administratively accepted and investigated–with regard to the Building Maintenance Specialist position–were the issues of race discrimination and gender discrimination.

B. *Equal Employment Opportunity Specialist Position*

In March 1997, Watson also sought EEOC counseling alleging that the IRS discriminated against him based upon his sex and race by failing to consider him for

a developmental detail to an Equal Employment Opportunity Specialist position. In April 2000, the EEOC consolidated Watson's 1995 complaint regarding the Building Manager position and the 1997 EEOC Specialist complaint. Also, Watson added a retaliation claim (based on his prior EEOC testimony against Schillingburg) to his claim involving the Equal Employment Opportunity Specialist detail.

## C. *Procedural Disposition*

After the EEOC denied his claims, Watson sued the IRS seeking damages for employment discrimination under Title VII of the Civil Rights Act of 1964. Upon completion of pretrial discovery, the IRS moved for summary judgment with regard to all issues. The district court granted the IRS's motion on all issues except Watson's claim of race-discrimination based on his non-selection for the Building Management Specialist position in 1995. Following a two-day trial, the jury returned a unanimous verdict in favor of the IRS. Watson filed a motion for a new trial, which the district court denied. This appeal followed.

## II. *Summary Judgment*

We first consider Watson's appeal of the district court's order granting partial summary judgment, specifically the court's ruling on his retaliation claim.[3] He argues that the district court erred in its conclusion that he failed to establish a prima facie case of retaliation in relation to his non-selection as a Building Management Specialist. We agree. Watson did in fact offer sufficient proof to establish a prima facie case of retaliation by offering proof that: 1) he engaged in protected activity–filing an affidavit in a co-worker's EEOC complaint; 2) an adverse employment action was taken against him–he was not promoted to Building

_____

[3] The only aspect of the district court's partial summary-judgment order addressed in Watson's appeal is the court's ruling on his retaliation claim. Thus, we will only consider this portion of the partial summary-judgment order in our analysis. *See In re Mid-American Energy Co.*, 286 F.3d 483, 487 (8th Cir. 2002) (holding that claims not raised in an appellant's initial brief to our Court are waived).

Management Specialist; 3) he showed a causal link between the two events–that Schillingburg (whom we view as a decision maker in the Building Management Specialist selection) allegedly commented that because of prior EEOC activity, Watson would never excel at the IRS. *See Kiel v. Select Artifacts*, *Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc).

Alternatively, the IRS argues that Watson waived his retaliation claim because Watson failed to raise the issue in his EEOC complaint. The district court, however, disagreed with the IRS's contention, concluding that:

> [Although [Watson] did not raise the retaliation claim in his EEO complaints, he apparently did raise it at some point during the administrative process because it was discussed by the EEOC in its Findings of Fact and Conclusions of Law for the consolidated cases. Therefore, [Watson's] retaliation claim will not be dismissed based upon a failure to exhaust administrative remedies.

However, a careful review of the EEOC's "Findings of Fact and Conclusions of Law" shows that the additional basis of retaliation for prior EEO activity was added only to the 1997 complaint involving the Equal Employment Opportunity Specialist detail,[4] not to the 1995 Building Manager position.

Plaintiffs in discrimination cases against government agencies must exhaust their administrative remedies prior to filing a civil action in federal district court. *Brown v. Gen. Serv's. Admin.*, 425 U.S. 820, 832 (1976). Specifically, Watson was required to seek timely and appropriate relief from the EEO department of the IRS, thereby providing the IRS with notice of the charges and an opportunity to comply

---

[4] Because Watson offers no argument on appeal relating to his claim that he was not selected for a developmental detail as an Equal Employment Specialist in retaliation for his prior EEO activity, he has waived the issue on appeal. *In re Mid-American Energy Co.*, 286 F.3d at 487.

voluntarily with applicable statutes. This procedural requirement also affords the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, thus avoiding unnecessary judicial action. *See* 42 U.S.C. § 2000e-16(c). The record reflects that Watson effectively raised claims of race and gender discrimination with the EEOC in relation to the Building Manager Specialist position, but it also shows that he made no claim or mention of retaliation.

In *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 223 (8th Cir. 1994), we extensively considered the requirements for administrative exhaustion:

> Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party with proper notice of the charge, as surely as would an initial failure to file a timely EEOC charge.

As in *Williams*, Watson's failure to make an assertion of retaliatory motive in relation to his non-selection as a Building Manager Specialist is fatal to his attempt to resurrect the issue.

Although the district court's grant of summary judgment in relation to Watson's claim of retaliation was predicated on the absence of a prima facie case, we may uphold a grant of summary judgment for any reason supported by the record, even if it differs from the reason given by the district court. *Anderson v. Larson*, 327 F.3d 762, 767 (8th Cir. 2003). Consequently, we affirm the district court's dismissal of Watson's retaliation claim because he failed to properly preserve the issue by exhausting all available administrative remedies.

### III. *Evidentiary Rulings Requiring New Trial*

Next, we consider Watson's appeal of the district court's denial of his new trial motion. The decision to grant a new trial is left to the sound discretion of the trial

court, and we will not disturb the trial court's decision absent a clear showing of abuse of discretion. *Pullman v. Land O'Lakes, Inc.*, 262 F.3d 759, 762 (8th Cir. 2001).

Watson seeks a new trial based on the district court's exclusion of all "evidence of [a] pattern and practice of discrimination." In raising objections to a district court's evidentiary rulings, an appellant is required to denote with "specificity with record references" the allegedly erroneous ruling and the improperly excluded evidence. *United States v. Cates*, 251 F.3d 1164, 1167 (8th Cir. 2001). Watson, however, failed to cite to the district court's ruling in the record, and as is our practice–without any arguments or citations to the record that would assist us in judging the merits of his claim of error–we decline to address it. *United States v. Darden*, 70 F.3d 1507, 1517 n.3 (8th Cir. 1995)

With regard to the objectionable evidentiary rulings at Watson's trial, we will only address those sufficiently identified and discussed in Watson's brief. *See*, *e.g.*, *Jasperson v. Purolator Courier Corp.*, 765 F.2d 736, 740 (8th Cir. 1985) (holding that failure to discuss an issue in an appellate brief constitutes abandonment of that issue). We review evidentiary rulings made at trial by a district court for an abuse of discretion, according such decisions "substantial deference." *Life Plus International v. Brown*, 317 F.3d 799, 803 (8th Cir. 2003).

## A. *Prior Promotion Attempts*

Watson cites authority supporting the relevance of "corporate atmosphere" evidence and contends that the district court categorically excluded evidence of Watson's prior promotion attempts and the IRS's pattern of changing the promotion process. However, he made no offer of proof with respect to this exclusion. Absent a proper offer of proof, we review under the plain-error standard and reverse only if there has been a miscarriage of justice. *Williams v. Wal-Mart Stores, Inc.*, 922 F.2d 1357, 1362 (8th Cir. 1990). The plain-error exception "must be confined to the most compelling cases, especially in civil, as opposed to criminal, litigation." *Johnson v.*

*Ashby*, 808 F.2d 676, 679 n.3 (8th Cir. 1987). This case does not compel a plain-error reversal. Watson had already introduced evidence that he was careful in preparing for the application process because of his prior experiences seeking promotions, thus the evidence withheld would have been cumulative.

## B. *Affirmative Action Undertakings*

Watson next argues that the district court wrongfully excluded "Evidence Touching on The IRS's Affirmative Action Goals." Watson's entire argument on this point consisted of one sentence alleging that he attempted to offer into evidence testimony regarding affirmative-action reports that reflected deficiencies within the agency that needed to be corrected. Allegations of error not accompanied by convincing argument and citation to authority need not be addressed on appeal. Fed. R. App. R. 28(a)(9)(A). As a result, we regularly decline to consider cursory or summary arguments that are unsupported by citations to legal authorities. *United States v. Stuckey*, 255 F.3d 528, 531 (8th Cir. 2001); *United States v. Wadlington*, 233 F.3d 1067, 1081(8th Cir. 2000); *United States v. Gonzales*, 90 F.3d 1363, 1369 (8th Cir. 1996).

## C. *Racial Comment*

Watson also contends that the district court erred by excluding a highly offensive racial remark allegedly made by one of Watson's managers. The comment came from Meeks, who, according to Watson's witness, stated that she would "never have a nigger supervising her bitches." Watson attempted to introduce this evidence through Diane Perkins, a former IRS employee; however, the IRS objected. The district court convened a bench conference. After the bench conference, the court sustained the objection.[5]

---

[5] The district court addressed the admission of the statement prior to trial and indicated Watson would need to establish adequate foundation.

Following the court's ruling, Watson's counsel attempted to state the basis for admission of the statement but did so in only vague terms and made no offer of proof through questioning either the purported declarant or the witness. Watson correctly notes that inflammatory racial remarks are admissible to establish an on-going pattern of racial harassment and discriminatory animus. *White v. Honeywell*, 141 F.3d 1270, 1276 (8th Cir. 1998). However, we do not believe the district court abused its discretion in concluding in this case that the proper foundation for admissibility of the statement had not been established. The district court found that there was little, if any, evidence that Meeks, as opposed to Borchert, was the actual decision maker. The court further found that a 1991 statement was too remote in time to support an inference of discriminatory animus in a 1995 promotion decision. Based on the offer of proof made by Watson at trial, we cannot conclude that the district court abused its discretion in denying the admission of the statement.

## III.

After careful consideration of the record and the arguments on appeal, we conclude that because Watson failed to exhaust his administrative remedies, his claim of retaliation is not viable. Further, we find no abuse of discretion in the district court's refusal to grant Watson a new trial based on his numerous allegations of evidentiary error. For the foregoing reasons, we affirm the district court's grant of partial summary judgment and its denial of Watson's motion for new trial.

_____