# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-3389

_____

Southwestern Bell Telephone Company,   *
                                         *

                  Petitioner,         *

                                         *

Ameritech Corporation; Time Warner   *
Communications Holdings; US             *
Telephone Association; GTE Service    *
Corporation; GTE Alaska,            *
Incorporated; GTE Arkansas,        *
Incorporated; GTE California,      *
Incorporated; GTE Florida,        *
Incorporated; GTE Midwest,       *
Incorporated; GTE South, Incorporated;  *
GTE Southwest, Incorporated; GTE    *   Petitions for Review of an Order
North, Incorporated; GTE Northwest,   *   of the Federal Communications
Incorporated; GTE Hawaiian Telephone  *   Commission
Company, Incorporated; GTE West    *
Coast, Incorporated; Contel of      *
Minnesota, Inc.; Contel of the South,  *
Inc.; Association for Local        *
Telecommunications Services; Bell    *
Atlantic-Maryland, Inc.; Bell Atlantic-  *
Washington, D.C., Inc.; Bell Atlantic-  *
West Virginia, Inc.; Bell Atlantic-   *
New Jersey, Inc.; Bell Atlantic-Delaware,*
Inc.; Bell Atlantic-Pennsylvania, Inc.;  *
Bell Atlantic-Virginia, Inc.; New York  *
Telephone Company; New England    *
Telephone and Telegraph Company;   *
Independent Telephone and        *
Telecommunications Alliance,      *

```
                                          *
      Intervenors on Appeal,              *
                                          *
      v.                                  *
                                          *
Federal Communications Commission;        *
United States of America,                 *
                                          *
      Respondents,                        *
                                          *
American Telephone and Telegraph          *
Company; Telecommunications               *
Resellers Association; MCI                *
Telecommunications Corporation; LBC       *
Communications, Inc.; Worldcom, Inc.;     *
Competitive Telecommunications            *
Association,                              *
                                          *
      Intervenors on Appeal.              *
```

_____

No. 97-3576
_____

```
US West, Inc.,                            *
                                          *
      Petitioner,                         *
                                          *
Southwestern Bell Telephone Company,      *
                                          *
      Intervenor on Appeal,               *
                                          *
Ameritech Corporation; Time Warner        *
Communications Holdings, Inc.; US         *
Telephone Association; Ameritech          *
```

Corporation; Time Warner     *
Communications Holdings, Inc.;    *
Association for Local Tele-     *
communications Services; GTE Service   *
Corporation; GTE Alaska, Incorporated; *
GTE Arkansas, Incorporated; GTE   *
California, Incorporated; GTE Florida,   *
Incorporated; GTE Midwest,     *
Incorporated; GTE Southwest,    *
Incorporated; GTE South, Incorporated; *
GTE North, Incorporated; GTE    *
Northwest, Incorporated; GTE Hawaiian *
Telephone Company, Incorporated;   *
GTE West Coast, Incorporated; Contel   *
of Minnesota, Inc.; Contel of the South,   *
Inc.; Bell Atlantic-Washington, D.C.,   *
Inc.; Bell Atlantic-West Virginia, Inc.;   *
Bell Atlantic-New Jersey, Inc.; Bell   *
Atlantic-Maryland, Inc.; Bell Atlantic-   *
Delaware, Inc.; Bell Atlantic-     *
Pennsylvania, Inc.; Bell Atlantic-    *
Virginia, Inc.; New York Telephone   *
Company; New England Telephone and   *
Telegraph Company; Independent    *
Telephone and Telecommunications   *
Alliance,           *
             *
   Intervenors on Appeal,     *
             *
   v.             *
             *
Federal Communications Commission;   *
United States of America,      *
             *
   Respondents,        *
             *
American Telephone and Telegraph   *

Company; Telecommunications            *
Resellers Association; MCI              *
Telecommunications Corporation;        *
LBC Communications, Inc.; Worldcom,    *
Inc.; Competitive Telecommunications   *
Association,                           *
                                       *
      Intervenors on Appeal.    *


_____

No.  97-3663
_____

Ameritech Corporation,                 *
                                       *
      Petitioner,              *
                                       *
Time Warner Communications Holdings, *
Inc.; US Telephone Association;        *
Association for Local Telecommun-      *
ications Services; Southwestern Bell   *
Telephone Company; GTE Service         *
Corporation; GTE Alaska, Incorporated; *
GTE Arkansas, Incorporated; GTE        *
California, Incorporated; GTE Florida, *
Incorporated; GTE Midwest,             *
Incorporated; GTE South, Incorporated; *
GTE Southwest, Incorporated; GTE       *
North, Incorporated; GTE Northwest,    *
Incorporated; GTE Hawaiian Telephone *
Company, Incorporated; GTE West        *
Coast, Incorporated; Contel of         *
Minnesota, Inc.; Contel of the South,  *
Inc.; Bell Atlantic-Washington, D.C.,  *
Inc.; Bell Atlantic-West Virginia, Inc.; *
Bell Atlantic-New Jersey, Inc.; Bell   *

Atlantic-Maryland, Inc.; Bell Atlantic-
Delaware, Inc.; Bell Atlantic-
Pennsylvania, Inc.; Bell Atlantic-
Virginia, Inc.; New York Telephone
Company; New England Telephone and
Telegraph Company; Independent
Telephone and Telecommunications
Alliance,

        Intervenors on Appeal,

        v.

Federal Communications Commission;
United States of America,

        Respondents,

American Telephone and Telegraph
Company; Telecommunications
Resellers Association; MCI Tele-
communications Corporation; LBC
Communications, Inc.; Worldcom, Inc.;
Competitive Telecommunications
Association,

        Intervenors on Appeal,

_____

No. 97-4106
_____

Southern New England Telephone
Company,

        Petitioner,

-5-

＊

Independent Telephone and Tele-    ＊
communications Alliance; Ameritech    ＊
Corporation; Time Warner    ＊
Communications Holdings, Inc.; US    ＊
Telephone Association; Association for    ＊
Local Telecommunications Services;    ＊
Southwestern Bell Telephone Company; ＊
GTE Service Corporation; GTE Alaska,    ＊
Incorporated; GTE Arkansas,    ＊
Incorporated; GTE California,    ＊
Incorporated; GTE Florida,    ＊
Incorporated; GTE Midwest,    ＊
Incorporated; GTE South, Incorporated; ＊
GTE Southwest, Incorporated; GTE    ＊
North, Incorporated; GTE Northwest,    ＊
Incorporated; GTE Hawaiian Telephone ＊
Company, Incorporated; GTE West    ＊
Coast, Incorporated; Contel of    ＊
Minnesota, Inc.; Contel of the South,    ＊
Inc.; Bell Atlantic-Washington, D.C.,    ＊
Inc.; Bell Atlantic-West Virginia, Inc.;    ＊
Bell Atlantic-New Jersey, Inc.; Bell    ＊
Atlantic-Maryland, Inc.; Bell Atlantic-    ＊
Delaware, Inc.; Bell Atlantic-    ＊
Pennsylvania, Inc.; Bell Atlantic-    ＊
Virginia, Inc.; New York Telephone    ＊
Company; New England Telephone and ＊
Telegraph Company,    ＊
    ＊
      Intervenors on Appeal,    ＊
    ＊
      v.    ＊
    ＊
Federal Communications Commission;    ＊
United States of America,    ＊
    ＊

-6-

Respondents,                          *
                                      *
American Telephone and Telegraph      *
Company; Telecommunications           *
Resellers Association; MCI Tele-      *
communications Corporation; LBC       *
Communications, Inc.; Worldcom, Inc.; *
Competitive Telecommunications        *
Association,                          *
                                      *
     Intervenors on Appeal.           *

_____

Submitted: January 15, 1998
Filed: August 10, 1998

_____

Before BOWMAN,[1] WOLLMAN, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Pursuant to 47 U.S.C. § 402(a) (1994) and 28 U.S.C. § 2342(1) (1994), various incumbent local exchange carriers (incumbent LECs)[2] petition for review of the Federal Communication Commission's (FCC's) Third Order on Reconsideration and Further Notice of Proposed Rulemaking, Implementation of the Local Competition Provisions

_____

[1]The Hon. Pasco M. Bowman became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 18, 1998.

[2]Ameritech Corp., Southern New England Telephone Co., Southwestern Bell Telephone Company, and U.S. West, Inc. all filed petitions for review. These petitions have been consolidated, and Bell Atlantic Telephone Companies, GTE Entities, and United States Telephone Association have all intervened in support of the consolidated petitions. We refer to this group collectively as "petitioners" throughout.

in the Telecommunications Act of 1996, CC Docket No. 96-98, 12 FCC Rcd. 12460 (Aug. 18, 1997) (Third Order on Reconsideration). The consolidated petitions challenge both the FCC's determination that shared transport constitutes a network element as defined by 47 U.S.C.A. § 153(29) (West Supp. 1998), and the FCC's determination that incumbent LECs must make shared transport available to new entrants on an unbundled basis pursuant to 47 U.S.C.A. § 251(c)(3), (d)(2). We affirm the FCC's order and deny the consolidated petitions for review.

## I.

In 1996, Congress amended the Communications Act of 1934 with the purpose of fostering competition in both the interexchange and local exchange markets. See Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (to be codified as amended in scattered sections of Title 47, United States Code) (the Act).[3] The issues presented in this case relate to the Act's local competition provisions. The Act requires incumbent LECs to allow new entrants access to their networks in three different ways. Specifically, a LEC must (1) permit requesting competitors to interconnect with the LEC's local network, (2) provide competitors with access to individual elements of its network on an unbundled basis, and (3) allow competitors to purchase its telecommunications services for resale. 47 U.S.C.A. § 251(c)(2)-(4). Together, these duties regarding interconnection, unbundled access, and resale are intended to provide would-be competitors with realistic opportunities to enter the market for local exchange service.

The issues presented in the consolidated petitions for review pertain to the incumbent LECs' duties regarding unbundled access. Section 251(c)(3) requires incumbent LECs to provide new entrants with "nondiscriminatory access to *network*

---

[3]All citations to sections and subsections of the Act are to the 1998 Supplement to West's United States Code Annotated.

*elements* on an unbundled basis at any technically feasible point on rates, terms, and conditions that are just, reasonable, and nondiscriminatory." (emphasis added). The Act defines "network element" as follows:

> The term "network element" means a facility or equipment used in the provision of a telecommunications service. Such term also includes features, functions, and capabilities that are provided by means of such facility or equipment, including subscriber numbers, databases, signaling systems, and information sufficient for billing and collection or used in the transmission, routing, or other provision of a telecommunications service.

47 U.S.C.A. § 153(29).

Although Congress defined the term "network element" in the Act, it invested the FCC with the authority to determine *which* network elements should be made available to new entrants on an unbundled basis. See 47 U.S.C.A. § 251(d)(2). Section 251(d)(2) limits the FCC's authority in this regard only insofar as it requires the FCC to consider two factors "at a minimum" as it makes this decision. These factors are whether "access to such network elements as are proprietary in nature is necessary," and whether "the failure to provide access to such network elements would impair the ability of the telecommunications carrier seeking access to provide the services that it seeks to offer." Id.

On August 8, 1996, the FCC issued its First Report & Order, Implementation of the Local Competition Provisions in the Telecommunications Act of 1996, CC Docket No. 96-98, 11 FCC Rcd. 15499 (Aug. 8, 1996) (First Report & Order), in which it established rules to implement the local competition provisions of the Act. In this order, the FCC identified various network elements and determined, pursuant to its authority under section 251(d)(2), that an incumbent LEC must make each of the elements the FCC had identified available to the LEC's competitors on an unbundled

basis. <u>See</u> First Report & Order ¶ 262; <u>id.</u> at A.P. B (47 C.F.R. § 51.319).[4]  Salient for our purposes is the FCC's treatment of interoffice transmission facilities, specifically *shared* interoffice transmission facilities.  Interoffice transmission facilities are the highways of the local exchange.  They connect the end offices and tandem switches within the local exchange to one another and carry telephone traffic between and among these offices and switches.   <u>See</u> First Report & Order, A.P.. B (47 C.F.R. § 51.319(d)(1)).  Interoffice transmission facilities are distinct from both the local loops, which connect end users to the local exchange, <u>see</u> <u>id.</u> (47 C.F.R. § 51.319(a)), and the various switches (local and tandem), which determine which interoffice transmission facilities are used to transport the traffic from  switch to switch, <u>see</u> <u>id.</u> (47 C.F.R. § 51.319(c)).   In its First Report & Order, the FCC emphasized that switching and transport are distinct network elements, each of which must separately be made available to entrants on an unbundled basis.  <u>See</u> <u>id.</u> ¶¶ 410, 440; <u>accord</u> 47 U.S.C.A. § 271(c)(2)(B)(v, vi) (requiring LECs to offer "[l]ocal transport  . . . unbundled from switching or other services" and "[l]ocal switching unbundled from transport, local loop transmission, or other services").

     In the First Report & Order, the FCC distinguished *dedicated* transmission facilities from *shared* transmission facilities, and treated each separately for purposes of unbundled access.  <u>Id.</u> (47 C.F.R. § 51.319(d)(1)).  Dedicated transmission facilities, which do not here concern us, are those transmission facilities used by a single customer or carrier.  <u>Id.</u>  Shared transmission facilities, on the other hand, carry traffic of multiple customers or carriers.  <u>Id.</u>  Regarding shared transmission facilities, the FCC initially determined only that incumbent LECs must provide "unbundled access to shared transmission facilities between end offices and the tandem switch."  <u>Id.</u> ¶ 440.

---

     [4]Because the version of 47 C.F.R. §  51.319 attached to the First Report & Order differs in relevant respects from the current version, we refer to appendix B of the First Report & Order when  speaking of the regulation as originally adopted in that order.

The FCC did not explain its meaning in detail, but some of its comments suggested that the FCC perhaps anticipated that each individual shared transmission facility—i.e., each link—must be made available as a separate unbundled network element. See id. ¶ 442 ("We find that it is technically feasible for LECs to unbundle the foregoing interoffice facilities as individual network elements."); id. ¶ 441 ("By unbundling various dedicated and shared interoffice facilities, a new entrant can purchase all interoffice facilities on an unbundled basis as part of a competing network, or it can combine its own interoffice facilities with those of the incumbent LEC."); but see id. at App. B (47 C.F.R. § 51.319(d)(2)) (referring to the "use of the features, functions, and capabilities of interoffice transmission facilities shared by more than one customer or carrier."). The exact nature of the incumbent LECs' unbundling duties regarding shared transmission facilities remained subject to dispute until the FCC issued its Third Order on Reconsideration, discussed below.

On July 18, 1997, this court issued an opinion in which we affirmed in part and vacated in part the FCC's First Report & Order. See Iowa Utils. Bd. v. FCC, 120 F.3d 753, 819-20 (8th Cir. 1997), cert. granted sub nom., AT&T Co. v. Iowa Utils. Bd., 118 S. Ct. 879 (1998). In particular, we affirmed the FCC's determination that various features, functions and capabilities of the local exchange network, such as operational support services, operator services, and signaling systems, were "network elements" for purposes of the Act. Iowa Utils. Bd., 120 at 808-10. We similarly affirmed the FCC's determination that various facilities, such as interoffice transmission facilities, fell within the statutory definition of network element. See id. at 818 n.38 (implying by omission that this regulation was upheld). Finally, we upheld the FCC's section 251(d)(2) determination that the network elements it had recognized should be made available to competitors on an unbundled basis. Id. at 808, 809-10.

After the FCC issued its First Report & Order, various interested parties filed petitions for reconsideration and clarification with the FCC. Two of these petitions requested clarification regarding what incumbent LECs must do to make shared

transmission facilities available to new entrants on an unbundled basis, pursuant to 47 U.S.C.A. § 251(c)(3). On August 18, 1997, the FCC issued its Third Order on Reconsideration, in which it addressed the issues presented in these two petitions. The FCC acknowledged that, in its First Report & Order, it had only required incumbent LECs to "provide 'shared transport' between the end office and tandem." Third Order on Reconsideration ¶ 2. Upon reconsideration, the FCC eliminated this limitation, concluding that incumbent LECs "should be required to provide requesting carriers with access to shared transport for all transmission facilities connecting LECs' switches—that is, between end office switches, between an end office switch and a tandem switch, and between tandem switches." Id. ¶ 2; see also id. ¶¶ 25, 26; id. at App. A (47 C.F.R. § 51.319)(d)(1)(ii)). Additionally, the FCC clarified that the function of "shared transport" constitutes a *single* network element, and directed incumbent LECs to make this function available on an unbundled basis. See id. ¶¶ 25-26, 33, 42-43, 47.

The consolidated petitions seek review of the FCC's Third Order on Reconsideration, arguing that it is contrary to both the Telecommunications Act of 1996 and this court's decision in Iowa Utilities Board. We affirm the FCC's order and deny the petitions for review.

## II.

We have jurisdiction to review final orders of the FCC pursuant to 28 U.S.C. § 2342(1) (1994) and 47 U.S.C. § 402(a) (1994). As we noted in Iowa Utilities Board, 120 F.3d at 793, we defer to administrative interpretations of statutes unless they conflict with the plain meaning of a statute, unreasonably construe an ambiguous statute, or are arbitrarily or capriciously adopted. See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-45 (1984). We emphasize here, as we did in Iowa Utilities Board, that we in no way purport to evaluate the wisdom or prudence of the policy decisions underlying the Act. 120 F.3d at 793. Rather, if we

find that the agency's reading of a statute is a permissible one, "we give that reading controlling weight, even if it is not the answer 'the court would have reached if the question initially had arisen in a judicial proceeding.'" Regions Hosp. v. Shalala, 118 S. Ct. 909, 915 (1998) (quoting Chevron, 467 U.S. at 843 n.11).

**A.      The Designation of "Shared Transport" as a Network Element is Consistent with the Act and Our Decision in Iowa Utilities Board.**

Petitioners argue that the FCC misinterpreted the Act when it determined that shared transport constitutes a network element as defined in section 153(29). They argue that, because the First Report & Order (arguably) defined each shared transmission facility between an end office and a tandem switch as a *separate* network element, the FCC has no power to aggregate all of an incumbent LEC's shared transmission facilities and designate the function which these facilities serve—shared transport—as a single network element. They further argue that because the function of "shared transport" constitutes so significant a portion of the local exchange, it cannot be considered a mere "network element." We disagree.

The term "network element" is defined by the Act. This definition states that both the individual "facilit[ies] or equipment" of the local exchange *and* the "features, functions, and capabilities which are provided by means of such facilit[ies] or equipment" constitute "network elements" for purposes of the Act. See 47 U.S.C.A. § 153(29); see also Iowa Utils. Bd., 120 F.3d at 809. For this reason, we held in Iowa Utilities Board that operational support services, operator services, directory assistance, call waiting, caller I.D., call forwarding, and signaling—all features or functions supported by a variety of different facilities or equipment—fell within the statutory definition of "network element." See 120 F.3d at 809. There we wrote as follows:

> Simply because these capabilities can be labeled as "services" does not
> convince us that they were not intended to be unbundled as network

elements. While subsection 251(c)(4) does provide for the resale of telecommunications services, it does not establish resale as the exclusive means through which a competing carrier may gain access to such services. We agree with the FCC that such an interpretation would allow the incumbent LECs to evade a substantial portion of their unbundling obligation under subsection 251(c)(3). We believe that in some circumstances a competing carrier may have the option of gaining access to features of an incumbent LEC's network through either unbundling or resale. [The features then at issue] satisfy the definition of "network element;" consequently, they are subject to the unbundling requirements of subsection 251(c)(3).

Id. at 809-10 (footnote omitted).

Using the same logic, we conclude that shared transport is similarly a network element. It is a "feature, function, [or] capability," and it is provided by facilities and equipment used in the provision of a telecommunications service. The statutory definition requires no more. See 47 U.S.C.A. § 153(29). In fact, the question presented in the case at hand is easier than the one we dealt with in the above-quoted passage of Iowa Utilities Board. There, we dealt with "finished services"[5] such as directory assistance and operations support services, while here, we deal with shared transport, which petitioners acknowledge is of no use whatsoever unless a new entrant additionally purchases switching. (See Br. for Pet'rs Ameritech , et al., at 29.)

---

[5]In Iowa Utilities Board, we were careful not to rule on the issue of whether operator services, directory assistance, caller I.D., call forwarding, and call waiting could be classified as "services" subject to the resale provisions of the Act, because that question was not properly before us. See 120 F.3d at 810 n.29 ("Even though the parties seem to agree that operator services, directory assistance, caller I.D., call forwarding, and call waiting can also be classified as 'services,' we make no ruling on this particular issue."). We held simply that these functions, features, and capabilities constituted network elements and were subject to the unbundling requirements of subsection 251(c)(3), regardless of whether they additionally could be considered services. Id. at 809-10.

Accordingly, we conclude that the plain meaning of the statute supports the FCC's determination that shared transport is a network element as defined in section 153(29). See Chevron, 467 U.S. at 842-43.

**B.      The FCC's Determination that Incumbent LECs Must Make "Shared Transport" Available to Entrants on an Unbundled Basis Comports With the Act.**

Logically separate from the FCC's designation of shared transport as a network element is the FCC's determination that incumbent LECs must make shared transport available to entrants on an unbundled basis pursuant to section 251(c)(3). As discussed above, section 251(d)(2) provides the FCC with the authority to make such determinations and does not limit this authority except to direct the FCC to consider two factors as it does so. First, the FCC must consider whether "access to such network elements as are proprietary in nature is necessary." 47 U.S.C.A. § 251(d)(2)(A). Second, it must consider whether "the failure to provide access to such network elements would impair the ability of the telecommunications carrier seeking access to provide the services that it seeks to offer." Id. § 251(d)(2)(B).[6]

Where, as it has here in § 251(d)(2), Congress expressly delegates to an agency the power to formulate policy and fill gaps in a statutory scheme, we defer to agency regulations promulgated pursuant to such delegation "unless they are arbitrary, capricious, or manifestly contrary to the statute." Chevron, 467 U.S. at 843. Here, Congress limited the FCC's authority only by directing it to consider "at a minimum" the two above-described factors, and petitioners do not argue that the FCC failed to give adequate consideration to either one. 47 U.S.C.A. § 251(d)(2). In fact, petitioners do not assert that the FCC violated the express language of section 251(d)(2) or any

---

[6]We upheld the FCC's interpretation of section 251(d)(2) in Iowa Utilities Board. See 120 F.3d at 810-12.

other provision of the Act. Rather, petitioners argue that the FCC's decision that incumbent LECs must provide shared transport on an unbundled basis is inconsistent with Congress's overarching intention of maintaining a meaningful distinction between unbundled access to network elements and resale.

The distinction between unbundled access and resale is important, petitioners argue, because sections 251(c)(3) and 252(d)(1) require incumbent LECs to provide unbundled access at cost-based rates, while sections 251(c)(4) and 252(d)(3) allow incumbent LECs to provide retail services for resale at a higher price, equal to the LEC's retail subscriber rates less avoided costs. Petitioners argue that, if use of all of an incumbent LEC's shared transport facilities may be collectively purchased on a per-minute-of-use basis, entrants will effectively be able to purchase preassembled platforms for resale at the lower cost-based price reserved for unbundled access to network elements. Petitioners argue that if this is allowed to occur, the distinction between resale and unbundled access will be obliterated.

This argument is predicated on petitioners' speculative assumption that shared transport will be priced on a usage-sensitive basis. Because the pricing scheme for shared transport (and all other unbundled elements) will be determined by the state commissions, see 47 U.S.C.A. § 252(c)(2); Iowa Utils. Bd., 120 F.3d at 818, it is impossible for this court to determine at this time whether shared transport will be priced in such a way as to erode the distinction between resale and unbundled access. Since, as in Iowa Utilities Board, "we do not know what the state-determined rates [or even what the rate structure] will be," it follows that petitioners' arguments regarding the actual costs that entrants will incur are "speculative at best." 120 F.3d at 816. Until the state commissions exercise their authority to determine how shared transport will be priced (i.e., whether on a flat, use-sensitive, or other basis, and at what price), we could do no more than conjecture as to whether the unbundled sale of shared transport will erode the careful distinction between resale and unbundled access. Accordingly, we decline at this time to consider petitioners' argument to this effect.

There will be time enough to do so once a state commission has compiled a record, applied its expert analysis, and rendered a decision, and an appeal has been taken to a federal district court pursuant to § 252(e)(6).

Petitioners also argue that the FCC's determination that incumbent LECs must provide shared transport on an unbundled basis is inconsistent with Iowa Utilities Board, in which we wrote:

> [Section] 251(c)(3) does not permit a new entrant to purchase the incumbent LEC's assembled platform(s) of combined network elements (or any lesser existing combination of two or more elements) in order to offer competitive telecommunications services. To permit such an acquisition of already combined elements at cost based rates for unbundled access would obliterate the careful distinctions Congress has drawn in subsections 251(c)(3) and (4) between access to unbundled network elements on the one hand and the purchase at wholesale rates of an incumbent's telecommunications retail services for resale on the other. Accordingly, the Commission's rule, 47 C.F.R. § 51.315(b), which prohibits an incumbent LEC from separating network elements that it may currently combine, is contrary to § 251(c)(3) because the rule would permit the new entrant access to the incumbent LEC's network elements on a bundled rather than an unbundled basis.

120 F.3d at 813.

Petitioners argue that this holding should be read to prohibit the FCC from requiring incumbent LECs to provide shared transport as a single unbundled element at a cost-based price. They argue that treating shared transport as a single unbundled element is the functional equivalent of requiring incumbent LECs to combine individual transmission facilities, which are themselves network elements, and provide them to new entrants on a bundled basis. They argue that by defining "shared transport"

broadly as a function derived from numerous shared transmission facilities, the FCC has acted in contravention of our Iowa Utilities Board decision.

In support of this reading, petitioners quote then-FCC Chairman Reed Hundt, who opined that the Third Order on Reconsideration "highlights the importance we place on incumbents making available to new entrants their network elements on a combined basis." Separate Statement of Chairman Reed Hundt (attached to the Third Order on Reconsideration). We conclude that Chairman Hundt's remarks were addressed to the provisions of 42 C.F.R. § 51.315(b), which then prohibited an incumbent LEC from separating requested network elements that it currently combined in its own configuration. Because we had not yet vacated subsection 315(b) when the FCC issued its Third Order on Reconsideration, the FCC believed at that time that it could prevent LECs from disassembling the combinations of individual network elements that the LECs had already assembled in various configurations to provide local telecommunications services. See Third Order on Reconsideration ¶ 44. Shortly after the issuance of the Third Order on Reconsideration, we vacated subsection 315(b) in response to a petition for rehearing. See Iowa Utils. Bd., 120 F.3d at 813. Accordingly, to the extent that the FCC relied on subsection 315(b) as support for the Third Order on Reconsideration, that reliance is no longer justified.

Mr. Hundt's remarks and paragraph 44 notwithstanding, we respectfully disagree with petitioners' argument that the Third Order on Reconsideration violates our mandate in Iowa Utilities Board. While the existence of § 51.315(b) may have provided some additional support for the FCC's determination that shared transport is a network element subject to unbundled access, it was certainly not the principal basis for that determination. As discussed above, the statutory definition of "network element" contained in § 153(29) expressly includes both individual network facilities and the functions which those facilities provide, either individually or in consort. Pursuant to section 251(d)(2), it is within the authority of the FCC to determine which of these network elements—the facilities, the functions, or both—incumbent LECs

-18-

must make available on an unbundled basis. Accordingly, when the FCC made its decision on reconsideration regarding shared transport, it was acting according to express statutory authority.

In Iowa Utilities Board, on the other hand, the FCC was acting in the absence of any statutory authority and in violation of section 251(c)(3) of the Act. There we were faced with the FCC's attempt to force incumbent LECs to make available precombined packages of already assembled network elements (i.e., platforms), which the FCC had never suggested were themselves network elements. Because the Act does not invest the FCC with the authority to require LECs to "bundle" elements and provide them on a combined basis, and because section 251(c)(3) expressly provides that network elements are to be provided on an "unbundled" basis "that allows requesting carriers to combine such elements," we held that the FCC had violated the Act. See 120 F.3d at 813.

In short, because the FCC action currently at issue—requiring LECs to provide access to shared transport on an unbundled basis—was made pursuant to express statutory authority, this case is distinguishable in this important respect from Iowa Utilities Board, where we held that the FCC had no authority to order LECs to combine network elements. Because we find that the statutory authority provided in §§ 153(29) and 251(d)(2) is sufficient, standing alone, to support the FCC's determination that shared transport is a network element, the fact that the FCC may have also relied on a rule (§ 51.315(b)) we later vacated is of little consequence.

Indeed, we believe that our decision in Iowa Utilities Board supports our decision in the case at hand. As discussed *supra* under subheading A, we expressly upheld the FCC's section 251(d)(2) determination that various "functions" should be provided on an unbundled basis, notwithstanding the fact that these functions could also be considered finished services purchasable for resale pursuant to section 251(c)(4). See Iowa Utils. Bd., 120 F.3d at 809 (acknowledging that "a competing carrier may

have the option of gaining access to features of an incumbent LEC's network through either unbundling or resale").  If the FCC may require incumbent LECs to provide unbundled access to functions and capabilities which may also be purchasable at retail as "finished services" (e.g., caller I.D., call waiting, call forwarding, operator services, and directory assistance), it certainly may require LECs to provide unbundled access to a separate function or capability such as shared transport which, when combined with other network elements, enables a new entrant to provide local telecommunications service.

In short, we hold that the FCC's determination that shared transport should be made available to entrants on an unbundled basis is not arbitrary, capricious, or otherwise contrary to law.  See Chevron, 467 U.S. at 843.

**C.    The FCC Did Not Assert Pricing Authority in the Third Order on Reconsideration.**

Petitioners and intervenors have expressed concern regarding paragraphs 30 and 35 of the Third Order on Reconsideration, in which the FCC opined that shared transport should be priced on a usage-sensitive, per-minute-of-use basis.  Petitioners correctly note that, under our cases, the FCC has no authority to establish pricing for shared transport or any other network element.  See Iowa Utils. Bd., 120 F.3d at 794-96; Iowa Utils. Bd. v. FCC, 135 F.3d 535, 537-38 (8th Cir. 1998), petitions for cert. filed, 66 U.S.L.W. 3672 (March 13, 1998) (Nos. 97-1519 & 97-1520).[7]

---

[7]Only when a state commission fails to act to carry out its responsibility under § 252 to determine rates for unbundled access to network elements is the FCC authorized to step in and assume the state commission's pricing role.  47 U.S.C.A. § 252(e)(5).

Clearly, any attempt by the FCC to assert authority over the pricing of unbundled network elements would violate both the Act as we read it and our decision in <u>Iowa Utilities Board</u>. However, we do not believe that the relevant passages of the Third Order on Reconsideration reflect any such attempt on behalf of the FCC. We read the relevant language in both paragraphs 30 and 35 to be dicta, in which the FCC expresses its opinion as to how the states ought to approach the question of pricing. Clearly, the FCC expresses a preference for usage-based pricing, but it follows this discussion with an express acknowledgment that, pursuant to <u>Iowa Utilities Board</u>, it "may not establish pricing rules for shared transport." Third Order on Reconsideration ¶ 30. In light of this express acknowledgment, we reject petitioners' assertion that language in either paragraph 30 or 35 represents an attempt to assert pricing authority in disregard of our <u>Iowa Utilities Board</u> decision.

Finally, we agree with petitioners that certain unvacated language in the First Report & Order can be read to assert pricing authority. <u>See</u> <u>id.</u> ¶ 258 ("Carriers seeking other elements, especially shared facilities such as common transport, are essentially purchasing access to a functionality of the incumbent's facilities *on a minute-by-minute basis*.") (emphasis added). However, this language was drafted before our decisions in <u>Iowa Utils. Bd.</u>, 120 F.3d at 793-800, and <u>Iowa Utils. Bd.</u>, 135 F.3d at 537-38, and we believe the FCC's current position is as expressed in paragraph 30 of the Third Order on Reconsideration.

III.

Accordingly, we deny the consolidated petitions for review and affirm the Federal Communications Commission's Third Order on Reconsideration.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT