**MICHIGAN BELL TELEPHONE COMPANY d/b/a Ameritech Michigan, Plaintiff,**

v.

**John G. STRAND; John C. Shea; David A. Svanda** all as Commissioners of the Michigan Public Service Commission (in their official capacities and not as individuals); **AT & T Communications of Michigan, Inc.; MCI Telecommunications Corporation;** and **MCIMetro Access Transmission Services, Inc.,** Defendants.

No. 5:98–CV–20.

United States District Court, W.D. Michigan, Southern Division.

Nov. 13, 1998.

Edward R. Becker, Dickinson Wright P.L.L.C., Lansing, MI, for plaintiff.

David M. Gadaleto, Asst. Atty. General, Don L. Keskey, Asst. Atty. General, David A. Voges, Asst. Atty. Gen., Frank J. Kelley, Attorney General, Public Service Division, Lansing, MI, for defendants John G. Strand, John C. Shea, David A. Svanda.

Arthur J. LeVasseur, Fischer, Franklin & Ford, Detroit, MI, Joan M. Marsh, AT & T Communications of Michigan, Inc., Lansing, MI, for defendant AT & T Communications of Michigan, Inc.

Albert Ernst, Dykema Gossett, Lansing, MI, for defendant MCI Telecommunications Corporation, defendant.

Lori M. Silsbury, Albert Ernst, Dykema Gossett, Lansing, MI, for defendant MCIMetro Access Transmission Services, Inc.

## OPINION

ENSLEN, Chief Judge.

This matter is before the Court on the motion of Defendants AT & T Communications of Michigan, Inc. ("AT & T") and MCI Telecommunications Corporation and MCImetro Access Transmission Services, Inc. ("MCI") to dismiss the Third Amended Complaint. The Court also considers the earlier motions of those parties and Commissioners John Strand, John Shea and David Svanda of the Michigan Public Service Commission ("MPSC") to dismiss earlier versions of the Complaint. For the reasons which follow, the motions will be granted and all claims raised in the Third Amended Complaint shall be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(6) and 28 U.S.C. § 1367(c)(3).

### Procedural Background

This lawsuit was filed on February 12, 1998. The filing of the suit soon prompted motions by the Defendants to dismiss the suit due to lack of jurisdiction and due to failure to state cognizable claims. Plaintiff's Amended Complaint was filed on February 27, 1998. Plaintiff moved on May 18, 1998 for permission to file a Second Amended Complaint. Before this motion could be acted upon, Plaintiff moved to file a Third Amended Complaint on August 31, 1998 predicated on the Eighth Circuit Court of Appeals decision in *Southwestern Bell Telephone Co. v. Federal Communications Commission,* 153 F.3d 597 (8th Cir. Aug.10, 1998). The Court permitted the Third Amended Complaint by Order of September 23, 1998. Subsequent to the filing of Third Amended Complaint, AT & T and MCI have requested dismissal of the Complaint in its entirety based on their earlier filing motions, their Motion to Dismiss Third Amended Complaint and the Eighth Circuit Court of Appeals' decision.

### Allegations of Third Amended Complaint

Plaintiff Michigan Bell Telephone Company d/b/a Ameritech Michigan ("Ameritech") has filed its Third Amended Complaint which makes factual allegations and requests relief in six separate counts. The Third Amended Complaint challenges under federal and state law the MPSC's Order on Rehearing of January 28, 1998. The Order, which is attached to the Third Amended Complaint, determines in pertinent parts the rates for Ameritech to provide unbundled network elements including "common transport." "Common transport" is defined by the Order as synonymous with "shared transport" as defined in the Federal Communications Commission's ("FCC") Third Order on Reconsideration. (Order at 15 n. 5. and 21.)

Plaintiff's Third Amended Complaint cites the federal Telecommunications Act of 1996, 47 U.S.C. § 151 *et seq.* Plaintiff alleges that pursuant to the terms of the Telecommunications Act, it entered into negotiations for separate interconnection agreements with competing Local Exchange Carriers (hereafter "LECs"), including AT & T and MCI, during 1996 and 1997. (Complaint at ¶ 17.) Agreements were reached with AT & T and MCI which were then approved by the Michigan Public Service Commission on April 4, 1997 and July 31, 1997, respectively. (Com-

plaint at ¶ 17.) These agreements contained provisions permitting the LECs to purchase unbundled network elements from Ameritech including shared transport facilities. (Complaint at ¶ 18–19.)

Count I of the Third Amended Complaint alleges that the MPSC Order violates the Telecommunications Act, as codified at 47 U.S.C. § 252, because it modifies, without the appropriate procedures of negotiation and arbitration under federal law, valid interconnection agreements. Count II of the Third Amended Complaint alleges that MPSC Order violates the Telecommunications Act, as codified at 47 U.S.C. § 251(c)(3), because tariffs for "common transport" require the provision of services other than "on an unbundled basis at any technically feasible point." Count III alleges that the Order violates state law including the Michigan Telecommunications Act, Mich.Comp.Laws § 484.2101 *et seq.*, because it requires tariffs which are beyond the authority of the MPSC to authorize. Count IV alleges that Order violates the Telecommunications Act, as codified at 47 U.S.C. § 251 and 252, because the MPSC lacks authority under federal law to issue tariffs as to "common transport." Count V alleges that to the extent that state law permits or require the common transport tariffs state law is preempted by the Telecommunications Act, as codified at 47 U.S.C. § 251, which preempts any state law which would erode the distinction under the Telecommunications Act between "unbundled network elements" and resold services. Count VI argues in that alternative that if the previous interconnection agreements require the provision of "common transport," then those agreements are invalid as in violation of the Telecommunications Act, as codified at 47 U.S.C. § 251.

### Judicial Notice of Prior Court and Agency Decisions

All parties in their briefs seek to characterize the import of prior court decisions and prior decisions of the MPSC. In deciding a motion under Federal Rule of Civil Procedure 12(b)(6), it is proper for the Court to take judicial notice of facts which are indisputable because they are capable of ready determination from resources whose accuracy cannot be reasonably questioned. *Coupe v. Federal Express Corp.,* 121 F.3d 1022, 1026 (6th Cir.1997); *Sanders Confectionery Products, Inc. v. Heller Financial, Inc.,* 973 F.2d 474, 480 n. 3 (6th Cir.1992); Fed.R. Evidence 201. Among those matters which may be judicially noticed are the outcomes of other court proceedings and administrative agency proceedings which are regularly and officially recorded. *Rodic v. Thistledown Racing Club, Inc.,* 615 F.2d 736, 738 (6th Cir.1980); *Coupe,* 121 F.3d at 1026; *see also Catz v. Chalker,* 142 F.3d 279, 285 (6th Cir.1998). Because the decisions of the Federal Communications Commission, the Michigan Public Service Communications and the Eighth Circuit Court of Appeals are such proceedings, the Court now takes judicial notice of the follow facts:

Upon enactment of Telecommunications Act of 1996, the Federal Communications Commission was under a statutory mandate to establish regulations within six months of enactment. 47 U.S.C. § 251(d)(1). As such, the FCC promptly issued its First Report and Order, *Implementation of the Local Competition Provisions of the Telecommunications Act of 1996,* 11 FCCRcd. 15499 (August 8, 1996). This Order was directly appealed to the Eighth Circuit Court of Appeals pursuant to 47 U.S.C. § 402(a) and 28 U.S.C. § 2342(1) (providing that proceedings to enjoin orders of the FCC be brought directly in the Circuit Courts of Appeals). The Eighth Circuit Court of Appeals issued its decision on the appeal on July 18, 1997 and further amended its decision on October 14, 1997. *Iowa Utilities Board v. Federal Communications* Commission, 120 F.3d 753 (8th Cir.1997). This decision was appealed to the United States Supreme Court, which granted certiorari on January 26, 1998. *AT & T v. Iowa Utilities Board,* —— U.S. ——, 118 S.Ct. 879, 139 L.Ed.2d 867 (U.S.1998). To date, the Supreme Court has not issued a decision on the appeal. The decision of the Eighth Circuit Court of Appeals held that several provisions of the First Order and Report exceeded the FCC's authority or were otherwise impermissible but that other provisions of its Order were permissible.

Thereafter, the FCC issued its Third Order on Reconsideration and Further Notice of Proposed Rulemaking, *Implementation of the Local Competition Provisions of the Telecommunications Act of 1996*, 12 FCCRcd. 12,460 (August 18, 1997). The FCC summarized its Order as follows:

1. In this Order, we address two petitions for reconsideration or clarification of the Local Competition and Order regarding the obligation of incumbent local exchange carriers (LECs) to provide unbundled access to interoffice transport facilities on a shared basis. We intend to address petitions for reconsideration of other aspects of the Local Competition Order in the future.

2. In the Local Competition Order, which established rules to implement sections 251 and 252 of the Communications Act of 1934 (the Act), as amended by the Telecommunications Act of 1996, the Commission required incumbent LECs "to provide unbundled access to shared transmission facilities between end offices and the tandem switch." In this reconsideration order, we first explain that the Local Competition Order required incumbent LECs to provide requesting carriers with access to the same transport facilities, between the end office switch and the tandem switch, that incumbent LECs use·to carry their own traffic. We further explain that, when a requesting carrier takes unbundled local switching, it gains access to the incumbent LEC's routing table, resident in the switch. Second, we reconsider the requirement that incumbent LECs only provide "shared transport" between the end office and tandem. For the reasons discussed below, we conclude that incumbent LECs should be required to provide requesting carriers with access to shared transport for all transmission facilities connecting incumbent LECs' switches—that is, between end office switches, between an end office switch and a tandem switch, and between tandem switches. Third, we conclude that incumbent LECs must permit requesting carriers that purchase unbundled shared transport and unbundled switching to use the same routing table and transport links that the incumbent

LEC uses to route and carry its own traffic. By requiring incumbent LECs to provide requesting carriers with access to the incumbent LEC's routing table and to all its interoffice transmission facilities on an unbundled basis, requesting carriers can route calls in the same manner that an incumbent routes its own calls and thus take advantage of the incumbent LEC's economies of scale, scope, and density. Finally, incumbent LECs must permit requesting carriers to use shared transport as an unbundled element to carry originating access traffic from, and terminating access traffic to, customers to whom the requesting carrier is also providing local exchange service.

3. We also issue a further notice of proposed rulemaking seeking comment on whether requesting carriers may use shared transport facilities in conjunction with unbundled switching, to originate or terminate interexchange traffic to customers to whom the requesting carrier does not provide local exchange service. Moreover, we seek comment on whether requesting carriers may use dedicated transport facilities to originate or terminate interexchange traffic to customers to whom the requesting carrier does not provide local exchange service.

*Third Order*, 12 F.C.C.R. 12,460 (Aug. 18, 1997) (footnotes omitted).

This Third Order was appealed to the Eighth Circuit Court of Appeals. The Eighth Circuit Court of Appeals decided the appeal on August 10, 1998. *Southwestern Bell Telephone Co. v. Federal Communications Commission*, 153 F.3d 597 (8th Cir. 1998). In affirming the Third Order the Eighth Circuit observed as follows:

After the FCC issued its First Report & Order, various interested parties filed petitions for reconsideration and clarification with the FCC. Two of these petitions requested clarification regarding what incumbent LECs must do to make shared transmission facilities available to new entrants on an unbundled basis, pursuant to 47 U.S.C.A. § 251(c)(3). On August 18, 1997, the FCC issued its Third Order on Reconsideration, in which it addressed the

issues presented in these two petitions. The FCC acknowledged that, in its First Report & Order, it had only required incumbent LECs to "provide 'shared transport' between the end office and tandem." *Third Order on Reconsideration* ¶ 2. Upon reconsideration, the FCC eliminated this limitation, concluding that incumbent LECs "should be required to provide requesting carriers with access to shared transport for all transmission facilities connecting LECs' switches—that is, between end office switches, between an end office switch and a tandem switch, and between tandem switches." *Id.* ¶ 2; *see also id.* ¶¶ 25, 26; *id.* at App. A (47 C.F.R. § 51.319) (d)(1)(ii). Additionally, the FCC clarified that the function of "shared transport" constitutes a single network element, and directed incumbent LECs to make this function available on an unbundled basis. *See id.* ¶¶ 25–26, 33, 42–43, 47.

The consolidated petitions seek review of the FCC's Third Order on Reconsideration, arguing that it is contrary to both the Telecommunications Act of 1996 and this court's decision in *Iowa Utilities Board*[v. FCC, 120 F.3d 753 (8th Cir.1997)]. We affirm the FCC's order and deny the petitions for review.

*Southwestern Bell*, 153 F.3d at 602.

Prior to the filing of the Complaint in this matter, on March 7, 1997, AT & T filed an interconnection agreement, which called for the provision of "Shared Transport," by Ameritech. This agreement was approved by the MPSC on April 4, 1997. The approval of the agreement was then appealed to the United States District Court for the Eastern District of Michigan, the Honorable Barbara Hackett, on May 5, 1997.

Prior to the filing of the Complaint in this matter, on or about June 17, 1997, MCI filed an interconnection agreement, which called for the provision of "Shared Transport," by Ameritech. This agreement was approved by the MPSC on July 31, 1997. In August 1997, at least two court actions were filed challenging approval of the agreement. These matters were eventually assigned to the Honorable Nancy Edmunds of the Unit-

ed States District Court for the Eastern District of Michigan.

### *Dismissal pursuant to Fed.R. of Civ.Proc. 12(b)(1) and 12(b)(6)*

Under the law of the Sixth Circuit Court of Appeals, an attack on the Court's subject matter premised on the face of the pleadings requires an analysis similar to that employed under Rule 12(b)(6) as to whether the pleadings state claims sufficient for relief. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990). In assessing jurisdiction, the Court must assume that all well-pleaded allegations of the complaint are true. *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir.1994). Notwithstanding, the Court need not accept legal conclusions drawn in the complaint. *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998). This is especially important in this suit because each of the counts asserted stem from legal conclusions which the Plaintiff has drawn regarding the effect of prior MPSC' action and prior court decisions (matters as to which the Court has taken judicial notice).

In considering a Rule 12(b)(6) motion, the Court accepts the well-pleaded allegations of the complaint as true and construes the complaint in the light most favorable to the plaintiff. A complaint should not be dismissed pursuant to Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). However, as under Rule 12(b)(1), the Court need not accept legal conclusions and may draw its own legal conclusions and take judicial notice of readily established facts.

Ordinarily, courts will first assess jurisdiction before deciding Rule 12(b)(6) motions because of the necessity of jurisdiction. *See* Fed.R.Civ.Proc. 12(h)(3). However, this rule of thumb makes little difference in the context in which Rule 12(b)(1) and Rule 12(b)(6) motions will both permanently preclude the relief sought. *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 917 (6th Cir.1986).

### Subject Matter Jurisdiction

Fundamental to federal court authority is the principle that federal jurisdiction is limited by the restrictions embodied in Article III of the United States Constitution. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986). Consequently, whenever it appears by suggestion of the parties or otherwise that the Court lacks jurisdiction over the subject matter, the Court is required to dismiss the action. Fed.R.Civ.Proc. 12(h)(3). Furthermore, subject matter jurisdiction is presumed lacking until the pleader shows otherwise. Fed.R.Civ.Proc. 8(a)(1).

In this matter, Plaintiff asserts jurisdiction based upon the Telecommunications Act (47 U.S.C. § 252(e)(6)), based on federal question jurisdiction (28 U.S.C. § 1331), based on supplemental jurisdiction (28 U.S.C. § 1367), and based on the federal declaratory judgment statute (28 U.S.C. §§ 2201–2202). The only independent bases for the federal jurisdiction are the Telecommunications Act and federal question jurisdiction (since the latter two statutes do not independently confer federal jurisdiction).

"To establish a cause of action in district court under section 1331 [the plaintiffs] must show first that their action ... 'arises under' ... [federal law] and second that section 1331 jurisdiction is not preempted by a more specific statutory provision conferring exclusive jurisdiction elsewhere." *Connors v. Amax Coal Co.*, 858 F.2d 1226, 1229–30 (7th Cir.1988). While the nature of the particular claims asserted in this case relate to federal statutes, namely the Telecommunications Act, both the Telecommunications Title, 47 U.S.C. §§ 252 and 402(a), and the Hobbs Act, 28 U.S.C. § 2342(a), limit the jurisdiction of the federal district courts as to telecommunications matters through the specific framework Congress has erected for review of telecommunications matters. Section 252(e)(6) of Title 47 of the United States Code provides in pertinent part:

> In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section [Section 252].

Review under this Section, according to the Eighth Circuit Court of Appeals, includes not only the review of approval or rejection decisions by state commissions, but also review of enforcement decisions by state commissions pertaining to interconnection agreements to determine violations of Sections 251 and 252. *Iowa Utilities Board v. Federal Communications Commission*, 120 F.3d 753, 804 n. 24 (8th Cir.1997); *see also U.S. West Comm., Inc. v. Hix*, 986 F.Supp. 13, 17 (D.Colo.1997). This understanding flows from the Congressionally assigned role of the district courts in preventing violations of the Telecommunications Act flowing from enforcement decisions or other decisions inconsistent with existing interconnection agreements. With this understanding in mind, the Plaintiff's position, that the Court has subject matter jurisdiction to review alterations and enforcement of the existing interconnection agreements, is generally correct. Nevertheless, in this particular case, such review is outlawed in some respects because it offends the provisions of Title 47 and Title 28 which provide the Circuit Courts of Appeals with exclusive jurisdiction to review orders and decisions of the Federal Communications Commission. The claims made by Plaintiff in Counts II, V and VI of the Third Amended Complaint assert that the common transport/shared transport requirements of the MPSC's Order and of the Agreements violate Section 251(c) by misunderstanding the words "unbundled network elements" in the statute. Such words as "unbundled network elements" are terms of art used by regulators and are best understood in the regulatory framework established. Because those terms were certain to cause dispute, the FCC published its Third Order on Reconsideration, which was upheld by the Eighth Circuit Court of Appeals. The Order as interpreted by the Eighth Circuit establishes that "shared transport" is a single network element which must be provided. While Counts II, V and VI challenge the MPSC's Order and Agreements and not the FCC's Order, the logical consequence of this chal-

lenge is that the FCC's Order is invalid. Because such determination is sought, this Court is barred by the exclusive jurisdiction provisions of the statutes from meddling in the exclusive work of the Circuit Courts of Appeals. As the United States Supreme Court said in *Federal Communications Commission v. ITT World Communications, Inc.*, 466 U.S. 463, 468, 104 S.Ct. 1936, 80 L.Ed.2d 480 (1984):

> We consider initially the jurisdiction of the District Court to enjoin FCC action as ultra vires. Exclusive jurisdiction for review of final FCC orders, such as the FCC's denial of respondents' rulemaking petition, lies in the Court of Appeals. 28 U.S.C. § 2342(1); 47 U.S.C. § 402(a). Litigants may not evade these provisions by requesting the District Court to enjoin action that is the outcome of the agency's order..... Yet that is what respondents have sought to do in this case. In substance, the complaint filed in the District Court raised the same issues and sought to enforce the same restrictions upon agency conduct as did the petition for rulemaking that was denied by the FCC.... The appropriate procedure for obtaining judicial review of the agency's disposition of these issues was appeal to the Court of Appeals as provided by statute.

*ITT World,* 466 U.S. at 468, 104 S.Ct. 1936. In other words, district court jurisdiction is precluded to the extent that "the complaint filed in the district court raise the same issues and seeks the same relief in substance as the declaratory ruling." *Wilson v. A.H. Belo Corp.*, 87 F.3d 393, 399 (9th Cir.1996). In this case, the challenges in Counts II, V and VI of the Third Amended Complaint to the MPSC Order and the Agreements premised on Section 251(c) raise the same issues and seek the same relief *in substance* as a challenge to the FCC regulations as in violation of Section 251(c). This challenge was raised and denied in the *Southwestern Bell* case in that the Eighth Circuit determined that shared transport is a single network element which must be offered unbundled by incumbent LECs.[1] As such, the Court is pre-

cluded by statute from entertaining these arguments but not other counts of the Third Amended Complaint which raise separate issues not considered in the *Southwestern Bell* decision.

## Amendment of the Interconnect Agreements

Plaintiff's Count I and Count IV also assert that the NTSC Order in question violated federal telecommunications law. In particular, those Counts assert that Section 252 provides for a means of negotiation, arbitrating and approving interconnect agreements and that this procedure was ignored when the MPSC issued its Order, which, according to Plaintiff, had the effect of replacing the requirements of the agreement—shared transport tariffs—with something different— common transport tariffs. Thus, Plaintiff asks the Court to reject the "new" "interconnect agreements" as inconsistent with Section 252's procedural requirements.

 Plaintiff's claims fail to state cognizable legal claims for two separate and independent reasons. First, the Section 252 negotiation procedure is not the sole means for the MPSC under the federal statutes to order and regulate telecommunications. Under Section 261(c), state commissions are explicitly permitted to impose requirements to further competition for intrastate services as long as the requirements are consistent with the Telecommunications Act. Under Section 251(d)(3), the MPSC may enforce its own regulations to the extent they: (a) establish access and interconnection obligations of local exchange carriers; (b) are consistent with Section 251; and (c) do not substantially prevent implementation of the Telecommunications Act. The requirement of "common transport"—to the extent of any minimal difference between it and "shared transport"— represents such a state regulation. It was done under state law precisely to foster and encourage state competition (by AT & T, MCI and other such companies) as to telephone services and does not in any way interfere with the requirements of the Act or

---

1. Even were the Court to consider these matters, it would deny relief under Rule 12(b)(6) because the Eighth Circuit's decision makes clear that the

MPSC Order and the Agreements are legal and consistent with the requirements of the Telecommunications Act.

the implementation of the Act. As such, the tariffs are permissible as consistent state regulation. Second, there is no real distinction between the common transport ordered and the shared transport previously agreed as part of the interconnect agreements. "Shared Transport" is defined in the agreements identically to the FCC regulations covering the same. *See* 47 C.F.R. § 51.319(d)(1). This same regulatory language was upheld by the Eighth Circuit in *Southwestern Bell* and was used by the MPSC in reference to both "shared" and "common" transport in its January Order. (*See* Order at 15 n. 5.) Ameritech's argument, that "common transport" is something different from "shared transport" because it includes an unauthorized combination of transport and switching, squarely ignores the language of the January Order as well as the outcome of the holding in *Southwestern Bell.* Accordingly, the Court determines that Counts I and IV of the Third Amended Complaint will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) due to failure to state a claim for which relief may be granted.

### Count III—State Law Claim

Count III, the only remaining count of the Third Amended Complaint, asserts a state law claim premised on the MPSC exceeding the authority granted to it under state law. The basis for this claim is purely supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Since this Court has now dismissed the other counts which provided a basis for federal jurisdiction and because the matter asserted is the type of matter better left to the state courts, the Court declines to exercise jurisdiction over the claim and dismisses the claim pursuant to 28 U.S.C. § 1367(c)(3).

### CONCLUSION

Defendants' several motions to dismiss are granted. Counts II, V and VI of the Third Amended Complaint are dismissed pursuant to Rule 12(b)(1). Counts I and IV are dismissed pursuant to Rule 12(b)(6). Count III is dismissed pursuant to 28 U.S.C. § 1367(c)(3). Judgment shall issue consistent with this Opinion.

### JUDGMENT

In accordance with the Court's Opinion of this date;

**IT IS HEREBY ORDERED** that Defendants' several motions to dismiss (Dkt. Nos. 4, 10, 13, and 72) are **GRANTED.**

**IT IS FURTHER ORDERED** that Counts II, V, and VI of the Third Amended Complaint are **DISMISSED** pursuant to Federal Rule of Civil Procedure 12(b)(1).

**IT IS FURTHER ORDERED** that Counts I and IV of the Third Amended Complaint are **DISMISSED** pursuant to Federal Rule of Civil Procedure 12(b)(6).

**IT IS FURTHER ORDERED** that Count III of the Third Amended Complaint is **DISMISSED** pursuant to 28 U.S.C. § 1367(c)(3).